LITTLE ROCK & M. R. Co. *v.* EAST TENNESSEE, V. & G. R. Co. *et al.*

*(Circuit Court, W. D. Tennessee. September 16, 1891.)*

1. RAILROADS—INTERSTATE COMMERCE—DISCRIMINATION BETWEEN CONNECTING LINES —OWNERSHIP OF THE COMPETING LINE.

The Iron Mountain Railroad from St. Louis, Mo., to Texarkana, Ark., and with its connections reaching into Louisiana and Texas and across the continent, has a branch from its main line at Bald Knob, Ark., to Memphis, Tenn. The Little Rock & Memphis Railroad runs from Little Rock, Ark., where it has a physical connection with the Iron Mountain road, to Memphis, Tenn., on a line 15 miles shorter than the other. At Memphis each road has equal facilities for connections with and transfers to roads running into the states east of the Mississippi river, if the Little Rock & Memphis facilities be not superior, as the bill alleges. The East Tennessee, Virginia & Georgia Railroad, with its leased line of the Memphis & Charleston Railroad, runs from Memphis eastwardly into several states and to the sea-board. Formerly, and before the building of the Bald Knob branch of the Iron Mountain road, the Little Rock & Memphis road had traffic arrangements with the Iron Mountain and East Tennessee, Virginia & Georgia roads for the through ticketing of passengers both ways. Since the building of its Bald Knob branch the Iron Mountain road refuses to recognize through tickets over the Little Rock

& Memphis road to or from points in the Iron Mountain system beyond Little Rock, and the East Tennessee, Virginia & Georgia road declines to keep such tickets on sale, or to offer its passengers a choice of routes, because the Iron Mountain will not take the tickets; but it does issue on equal terms through tickets over either route to Little Rock itself. *Held* that, as between the Iron Mountain and Little Rock & Memphis roads, this was not a discrimination between connecting lines, prohibited by the interstate commerce act, but only a legitimate offer of the superior facilities of a through line over a local line in competition for the through travel, and that the ownership of a rival line authorized such preference of one's own road; that, as between the Little Rock & Memphis and the East Tennessee, Virginia & Georgia roads, there was not any unjust, undue, or unlawful discrimination, because the facilities offered by the Iron Mountain, of a longer and through track to points not reached by the other road, were superior to those offered by the local and shorter road, and, until the Iron Mountain would make through rates with it that would afford equal facilities in this respect, there could be no through tickets sold usefully by the East Tennessee, Virginia & Georgia road, and hence there was no unlawful discrimination in the transaction.

**2.** SAME—JURISDICTION.

The special remedies provided by the interstate commerce act are cumulative, and not exclusive of the general remedies given by the judiciary act conferring jurisdiction of all suits and controversies arising under an act of congress, regardless of any diversity of citizenship between the parties.

In Equity.

*U. M. & G. B. Rose* and *W. G. Weatherford*, for plaintiff.

*Morgan & McFarland, Poston & Poston*, and *Wm. M. Baxter*, for defendants.

HAMMOND, J. The Little Rock & Memphis Railroad extends from Memphis, Tenn., to Little Rock, Ark., where it has a physical connection with the St. Louis, Iron Mountain & Southern Railroad, extending from St. Louis, Mo., by way of Little Rock, to Texarkana, at the junction of the boundaries of the states of Texas, Arkansas, and Louisiana, where it connects with other railroads running into Texas and across the continent. The East Tennessee, Virginia & Georgia Railroad, with its leased line of the Memphis & Charleston Railroad, extends eastwardly from Memphis to the eastern boundary of the state of Tennessee, and with its connections runs into many states and to the sea-board. The Iron Mountain road has a branch of its road running from Bald Knob, Ark., to Memphis. At Memphis the eastern and western connections are made by rail through the streets of the city, and by railroad transfer ferries across the Mississippi river; but it is alleged in the bill that as to passengers the connection with the Iron Mountain road must be made by ordinary vehicles, through the streets, transferring them from one railway car to another from the stations of each road, while the connection with the Little Rock road may be made by rail through the city and across the river; wherefore the bill alleges the traveling public prefers the Little Rock & Memphis road, and would largely patronize it, but for the alleged discriminations against it, which it is the purpose of the bill to remove. These discriminations consist, as appears from the averments of the bill, of a traffic arrangement made between the Iron Mountain road and the East Tennessee, Virginia & Georgia system, whereby through ticketing of passengers is made to points beyond Little Rock over the Bald Knob branch of the Iron Mountain road, which is refused to the Little Rock road, and, coming this way, the Iron Mountain refuses

to sell through tickets over the Little Rock road to Memphis or beyond. This arrangement is carried out by the East Tennessee, Virginia & Georgia declining to sell through tickets over the Little Rock, and the Iron Mountain refusing to recognize such tickets on its road; and the bill states specifically the facts and figures which show how hardly this discrimination bears upon the Little Rock road, and deprives it of travel which, before the Bald Knob branch was built, it enjoyed as a monopoly, and would yet enjoy, the bill states, if the choice of the traveling public was allowed to operate in favor of its better facilities and shorter route. The bill avers that this discrimination is in violation of the interstate commerce act of congress, and prays for a mandatory injunction and other process to compel the defendant roads to sell and recognize through tickets over the plaintiff road, and for general relief.

It may be observed here that the bill does not complain of any discrimination to Little Rock or points on the plaintiff road between Little Rock and Memphis, and it is stated in the argument that the East Tennessee Virginia & Georgia system still sells tickets over the plaintiff road to Little Rock, if desired, as well as over the Iron Mountain; but the trouble arises over points beyond Little Rock west, and beyond Memphis east. To this bill there has been a demurrer filed, because—*First*, there is no equity in it; *second*, there is no complaint cognizable under the interstate commerce act, and no conduct is averred violating it; *third*, the matter complained of is not subject to legislative or judicial control, and can be reached only by mutual agreement; and, *fourth*, not coming within the interstate commerce act, the court has no jurisdiction, a diversity of citizenship not being averred. The bill is based upon the plaintiff's construction of the third section of the interstate commerce act, which reads as follows:

"Sec. 3. That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper, and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding, and delivering of passengers and property to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines; but this shall not be construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business." 24 St. 380.

The questions made about the jurisdiction may be easily disposed of so far as they relate to the authority of the court to adjudicate the issues tendered by the bill. The subject-matter of the suit is one arising under an act of congress, and the court has jurisdiction without regard to any diversity of citizenship of the parties. *Kentucky & Indiana Bridge Co. v. Louisville & N. R. Co.*, 37 Fed. Rep. 567, 615. The argument for

the demurrer proceeds, however, upon the theory that the jurisdiction of the court here is limited by the provisions of the interstate commerce act prescribing certain remedies which may be taken in this court for its enforcement. It is hardly necessary to decide that question; but, if it be, there can be but little doubt that the plenary jurisdiction of this court to entertain all controversies arising under an act of congress, either at law or equity, has not been abbreviated by this act in relation to controversies arising under it, but the special remedies, so far as they are special, are merely supplementary to the ordinary remedies existing under the subsisting judiciary act, which governs all our jurisdiction. This is fairly inferable, if not directly decided, from the decision of Circuit Judge JACKSON, just cited; and in my judgment there can be no doubt of this, whether it has been so decided or not. Whatever jurisdiction a court of equity may entertain of this controversy may be entertained here, if not under the regulations of the interstate commerce act, prescribing certain remedies, then under the judiciary act, giving us the powers of an equity court as to all cases and controversies arising under any act of congress.

But when we come to consider that branch of the demurrer which denies the equity of this bill, as in all other demurrers of like kind, it presents for judgment the question whether the bill states an equitable right and asks an equitable remedy, taking the facts averred to be true as stated. It is not so much a question of jurisdiction, often, as it is a question of the sufficiency or merits of the bill; and, that being the case here, we proceed to consider it in that view. If this bill averred that the East Tennessee, Virginia & Georgia Railroad refused to give passengers going over the plaintiff road the same rates and facilities, including through tickets and traffic transfers, that it affords to the Iron Mountain road for passengers going to Little Rock or any other point in the plaintiff road, the court would not hesitate to say that it would be a violation of this section of the interstate commerce act. Whether such violation could be remedied by a court of equity, and by a bill like this, or in a court of law, or could only be reached, as probably many violations only can, by resort to the remedies afforded for criminal prosecution by the act, would be another matter. But it does not follow, because congress has not gone far enough to construct the machinery to compel such connections and facilities in the one case as are given by contract in the other case, that it is not a violation of the interstate commerce act; nor, because a court of equity or a court of law cannot redress the violation, as they are now authorized to proceed, that there has been no violation at all. Nor can this prohibition of undue or unreasonable discrimination be evaded by a contract any more than in any other way, if it be undue or unreasonable. It may be that whether the unlawful discrimination be made through the medium of a contract, whether of "through routing," as it is called, or otherwise, or by a refusal of the same rates and same facilities which are given by contract or without a contract, there is at present no redress by resort either to the administrative board which we know as the "Interstate Commerce Com-

mission," or to the ordinary or special remedies prescribed for the courts of law or equity; yet it might possibly be redressed by the criminal courts under the interstate commerce act, or without the criminal provisions of that act, if the United States had any common-law jurisprudence of crime, (which it has not,) by prosecution as for a misdemeanor. But this bill does not allege any such violation of the act as that suggested, and it seems to be conceded that the East Tennessee, Virginia & Georgia road does not sell through tickets, and affords the same facilities over the plaintiff's road as over the Iron Mountain to Little Rock; the trouble being not there, but in the refusing to sell through tickets, and afford the same facilities to points beyond Little Rock and not on the plaintiff road, but on the road of the East Tennessee, Virginia & Georgia road's co-defendant, the Iron Mountain road.

Now, reversing the proposition just considered, and coming this way from the west, the court could have just a little hesitation in holding that it cannot be a violation of the interstate commerce act, and it may be even doubtful if congress could make it so, since it might be taking property for the public use, so to speak, without compensation, or depriving one of property without due process of law, for the Iron Mountain road to prefer to travel passengers over its own road to Memphis to traveling them over the plaintiff's road, whether they come from Little Rock or beyond on the Iron Mountain road, or some other, and whether they be going only to Memphis or beyond to the eastward or elsewhere; and it cannot be either an undue or an unreasonable discrimination against the plaintiff to afford for passengers superior facilities, such as through tickets, shorter rates, or the like, over its own road, in preference to that of its rival, running a road part of the way in the same direction. For illustration, if a passenger wishing to go from Texarkana or further on from some point in Texas to Memphis or beyond desires to travel over the Iron Mountain road, why should it not take him all the way to Memphis, and deliver him to the East Tennessee & Georgia, or some other road wishing to take him on easy terms as to rates, through tickets, and the like, rather than shunt him, at Little Rock, upon the plaintiff's road? It cannot be an unfair or an unreasonable discrimination against the plaintiff for the Iron Mountain to keep him on its own road by offering him superior facilities in the respects mentioned, however undue or unreasonable it might be in other roads to refuse the plaintiff the same facilities in transporting him that it affords the Iron Mountain. In other words, the Iron Mountain would not be violating the statutory prohibition in such a transaction, whatever may be said of other roads. It would be free of such imputation, because it has a line of its own, covering the same distance, and may prefer itself to others, as we all do in obedience to human nature. But even as to the East Tennessee, Virginia & Georgia road, why should it not take this passenger from the Iron Mountain at Memphis on through tickets, easy rates, and whatever terms may be agreed upon, without an imputation of discriminating against the plaintiff. It could only do that by refusing to take the plaintiff's passengers, brought to Memphis, on the same

terms as it took the others; and this refusal is not alleged.   It is no fault
of the East Tennessee road that the plaintiff cannot induce the Iron
Mountain to bring passengers over its road from Texas to Little Rock and
and deliver them for transportation to the plaintiff from Little Rock to
Memphis; and we have seen that the Iron Mountain may lawfully refuse
this, because it has a road of its own for that service.

Recurring to travel westward from points under the control of the East
Tennessee, Virginia & Georgia Road, and we have precisely the same
condition; in principle, however, it may seemingly be diverse, for, one
desiring to travel from Knoxville, Tenn., let us say, to Texarkana, or
beyond into Texas, reaches the Iron Mountain at Memphis, and while
he may have a choice of two roads there it is for only a part of the way,
and he must at last take the Iron Mountain at Little Rock, and go over
that road beyond.   It does not depend wholly upon equal or better facil-
ities for transfer at Memphis, but also upon the capacity to transport
the passenger to his destination beyond there.   Is it not plain that the
Iron Mountain may offer him the same facilities to take its road at Mem-
phis that it offered in the other case,—may prefer its own road if it
chooses? That it may force him to do that thing by refusing to enter
into any arrangement with the plaintiff for a joint transportation of the
passenger is equally clear.   It is again the right of one to prefer one's
self to another, and that cannot be an undue or unreasonable discrimi-
nation, however hardly it may bear upon that other, as long as the other
is not molested in its business by a refusal to transport its passengers
upon the same terms granted to the passengers of other roads.   It would
be unlawful if the Iron Mountain refused the same rates from Little Rock
onward that it offered to other roads feeding it at that point, or to other
passengers taking its track there; but it cannot be unlawful to prefer to
feed itself from Memphis, rather than have the plaintiff feed it.   So the
East Tennessee, Virginia & Georgia road, like the passenger we have in
hand, may be compelled to route over the Iron Mountain road, rather
than over the Little Rock road, by this exercise of its lawful right of pref-
erence of its own road by the Iron Mountain.   The East Tennessee might
violate the statute, if the plaintiff's road ran parallel with the Iron Mount-
ain all the way our passenger is going, if it refused him a choice of routes
on the same terms; but that is not this case, and the Iron Mountain has
the advantage in reaching points not reached by the plaintiff, and which
can only be reached over its own road.   The sum of it is that the whole
merit of this bill must be tested solely by the right of the Iron Mountain
to prefer its own road to that of the plaintiff; and, that right being law-
fully exercised, there can be no wrong in other roads yielding a compul-
sory adjustment to it; and the plaintiff is without remedy, unless con-
gress adopts the suggestion of the interstate commerce commission, and
interferes to make rates and routes through some agency appropriate to
the process, if congress has the power in a case like this, which may be
doubtful.   L. R. Co. v. East Tennessee, V. & G. R. Co., 3 Int. St.
Com. R. 10.   In that case the interstate commerce commission clearly
declares that that which was complained of by this bill is in violation

of the section of the act which has been quoted, and refused relief only because congress has not authorized the commission, or the courts, or any other governmental agency to correct the violation by adjusting the rates and facilities to the situation; and, in the absence of such legislation, like that found in the English act to accomplish a similar purpose, the object can only be accomplished by agreement.   It is alleged in the argument here that there is no power anywhere to coerce such an agreement until congress enlarges the legislation.   If this be so, then, indeed, a criminal prosecution would be the only remedy; but it is possible, if the court found the transactions complained of to be a violation of the act, that at least partial relief might be afforded through this bill by *mandamus*, or injunction, or both, not to make a contract for the parties, or rates of carriage, or the like, but by forbidding and enjoining the execution of any contract which is unlawful until it be made lawful by conformity to a regulation of commerce established by congress under its authority.   We do not quite agree that the courts would be powerless in such a case to redress the violation of an act of congress.   But we are relieved here of any decision of that question by our conclusion that it is not a violation of the interstate commerce act for a carrier to prefer its own road to that of its rival, in a case like this, and for the reasons already stated.   The interstate commerce commission places its opinion upon the ground that, while there is an apparent justice in the view we have taken, it is subordinate to the public policy manifested in the act, of facilitating the unrestricted flow of commerce between the states, and designed "to insure to the people every facility of equal choice which franchises granted in the public interest can by any combination of reasonable routes afford."   This is true beyond question, but in exercising this, as every other governmental power, legislation is limited in this country, if not in England, where parliamentary power is in a measure supreme, by private right, oftentimes.   No one is compelled to apply or to use his property for the public good without compensation.   If the public takes it to itself this is clearly so, and, while the compulsory surrender of the private right we are considering for a public benefit might not be a taking of property within the constitutional prohibition, it is so nearly akin to it in principle that, even were the power to compel it existing, the exercise of the power should not be implied except by necessity; and certainly it seems to us not from the language of this act, so equivocal in its relation to the precise point of consideration presented by the facts of this case, however plain it may be in relation to other situations.   Moreover, the prohibitions against impairing vested rights or depriving one of his property without due process of law and the like, found in a variety of forms in our American constitutions, state and federal, may impose some limitation upon such legislation, or upon a construction of general language used in this legislation, to prevent the abrogation of this right in the manner suggested by the interstate commerce commission; and possibly this accounts for the absence of the clauses of the English legislation referred to as wanting in our act.

On the other hand, until an authoritative adjudication, we could not

entirely agree that, by any contract for through routing between carriers, the prohibited discriminations of this act may be made, or that they would be held to be not prohibited because of any common-law right to make such contracts, or that it would be a proper test of the statutory prohibition as to the undue and unreasonable preference or advantage and reasonable, proper, and equal facilities, to apply the common-law right of contracting for carriage beyond the carrier's own lines, thereby giving to a line composed of several independent carriers this benefit of the ownership of a continuous road, which we concede to the Iron Mountain in this case; for the common-law right to contract, as between independent carriers, is not the same thing as a common and joint ownership, by any means; and the one may be the subject of regulation by congress, while the other may not; and it is not quite clear why a given carrier may afford a preference to a thing carried by one road over that carried or which might be carried by another through the medium of a contract to carry jointly, when it could not do that thing outside of such a contract; nor why the fact of such a contract would make a given discrimination otherwise unlawful a lawful one under this act. But in this case we have endeavored to show that the discrimination here does not arise at all out of the contract for through routing between the Iron Mountain and East Tennessee roads, but solely out of the right or advantage of ownership possessed by the Iron Mountain of a road parallel to plaintiff's road. If the East Tennessee road should sell the tickets demanded by plaintiff, it would do no good, unless the Iron Mountain would recognize them, which, because of this advantage of ownership, it is not compelled to do under this act. Circuit Judge CALDWELL decided this in the case of *Little Rock & M. R. Co.* v. *St. Louis, I. M. & S. R. Co.*, 41 Fed. Rep. 559, although he gives other reasons also for his judgment in that case, perhaps. It is quite true that the facts of that case are not precisely like this in some respects, for there the Hot Springs road, which was the co-defendant of the Iron Mountain, had no physical connection at all with the plaintiff road, as the East Tennessee road has here, and the only connection was over the Iron Mountain from Malvern to Little Rock. Yet that fact, in the view we have endeavored to present, becomes immaterial as a distinction in this case, because of this fundamental advantage of ownership all the way from both Malvern and Little Rock to Memphis, which advantage operates as well at Memphis in favor of the East Tennessee road as at Malvern in favor of the Hot Springs road; and the want of physical connection or the fact of physical connection with the plaintiff road does not enter into the question of the reasonableness of the discrimination in one's own favor over one's own road. In either case, as we have endeavored to show, the right of preference growing out of the ownership is paramount to any demand of the public for competing lines in determining the reasonableness of the discrimination made in a case like this. And, as Judge CALDWELL well remarks, to overthrow this right of preference would be to discourage the building of competing lines, rather than to maintain them. The truth is, the plaintiff is a competing line over only a comparatively few miles with the

Iron Mountain system, and to force that road to traffic with it would be to give the plaintiff a share of the profits of the capital invested in the whole Iron Mountain system, just as if it was a part of that road all the way through, instead of a rival road for a part of the distance. This would be an unreasonable discrimination in the plaintiff's favor. It does not seem just that a short road should thus be made equal to a long one in this matter of preserving the public benefit of competition. If the benefit be preserved for the local travel which covers the plaintiff's line, that is all it can justly ask; and it has not the right to become a branch of a trunk line under the pretense of competing for a through travel, which it cannot accommodate. It does not in fact compete for that travel, and cannot complain of discriminations concerning it until it does,—that is, can afford equal facilities, not only for transferring at Memphis, and taking the traveler part of the way, but equal facilities with the Iron Mountain for taking him all of the way that road takes him. This statutory right of equal facilities is reciprocal, and one carrier must be able to furnish equal facilities with the other before it can complain of discrimination. The chief facility is a road reaching the same points with its rival about which the discrimination arises. If the Little Rock had this, I doubt if any combination by contract or otherwise would enable the East Tennessee road to discriminate against it lawfully, although there might be, under existing legislation, no remedy except a criminal prosecution; but, in the absence of this competition in fact for points beyond Little Rock, it cannot be necessary to decide that question.

It may be conceded to counsel for the plaintiff that neither the case of *Atchison, T. & S. F. R. Co.* v. *Denver & N. O. R. Co.*, 110 U. S. 667, 4 Sup. Ct. Rep. 185, nor that of *Kentucky & Indiana Bridge Co.* v. *Louisville & N. R. Co.*, *supra*, controls this. In each of those cases there was a want of physical connection at suitable and properly equipped stations or depots to invoke the requirement of an equal facility for exchange of traffic, which distinguishes it from this case. Moreover, in the Colorado case the supreme court interpreted the constitution of the state as declaring only the common law against discriminations to make it irrepealable, but *non constat* that this third section of the interstate commerce act means no more than the Colorado constitution is interpreted to mean. The language is different, and the historical surroundings of the act of congress demonstrate that congress was exercising its plenary power to regulate interstate commerce, and not declaring the common law to make it fundamental, for, doing only that, it had scarcely any reason to act at all, as the Colorado convention had. And in the Kentucky case it was particularly decided that the plaintiff corporation was not a common carrier at all within the interstate commerce act; and this fact, and the want of reasonable transfer facilities, amply distinguish it from this case. As was said in the *Express Cases*, 117 U. S. 29, 6 Sup. Ct. Rep. 542, 628, the regulation of matters of this kind is legislative, and not judicial, and the courts can go no further than to enforce what congress has in the exercise of its legislative power declared as a proper regulation

of commerce. It has not declared, if it may do so, that a railroad reach-
ing with its own tracks an outlet and inlet for traffic over its own road
must share with a parallel road its through traffic to points not reached
by its competitor by taking that road's through tickets over its own lines
upon equal terms, as to rates or otherwise, with its own traffic. It may
be compelled to take up the plaintiff's passengers at Little Rock, and carry
them to the points not reached by the plaintiff's road, upon the same
terms as other passengers taking its track at Little Rock, but not upon
the same terms as passengers taking its track at Memphis for points on
its line beyond Little Rock. The two things are not equal to each other,
and that reciprocity of equal facilities for equivalent services is wanting,
and therefore the case does not fall within the statutory definitions of the
discrimination which is forbidden; and, if the Iron Mountain road may
lawfully decline the tickets which plaintiff would like to issue, the East
Tennessee road is not bound to keep them on sale as an equal facility of
commerce.

Neither does it seem to me that the case of *Oregon Short Line & U. N.
R. Co.* v. *Northern Pac. R. Co.*, 3 Int. St. Com. R. 205, cited by plain-
tiff's counsel, controls this case. I find some difficulty in this report
of the case (and I am unable to find it elsewhere reported)·in compre-
hending the facts, but I think the peculiarity of this case is not in that,
—the ownership, namely, by the defendant road of a parallel track cov-
ering all the ground of the plaintiff, and extending beyond it to points
about which the discrimination complained of has been made. It is
true that District Judge DEADY expresses very forcibly his opinion
that the law is useless if through routing over an excluded road upon
the same terms as the favored road cannot be compelled where the par-
ties cannot agree about it, and if by an agreement for a continuous
through freighting the discrimination against competitors thereby effected
becomes reasonable simply because of a right so to contract at common
law, which right congress possibly intended to modify or regulate by this
act; and that which he says is reasonable and plausible indeed. Yet he
does not hold this as applicable to roads situated towards each other as
these are, if I understand the situation in that case.

Again, the case of *New York & N. R. Co.* v. *New York & N. E. R.
Co.*, 4 Int. St. Com. R. 1, seems very analogous to this case, and the
judgment there seems somewhat inconsistent with that given by the
interstate commerce commission in this case when it was before that tri-
bunal, notwithstanding an apparent struggle to distinguish them. But
it is distinguished in both the opinions written in that case, though
upon somewhat different grounds. The interstate commerce commis-
sion in the former case dismissed a petition almost identical with the
bill we have before us, because it had no power, and there was none
elsewhere conferred by congress, to make through rates and through
routings where they were denied, as may be done under the English
legislation, although the very conduct complained of in this case was
there held to be a violation of the act; but in the latter case, now under
observation, in referring to the former it seems to concede that there

was in this case no violation of the act for the reasons stated by Judge CALDWELL, which are quoted, and have been cited by us here. The opinion, however, further refers to the operation of the right of ownership, and in effects holds that, although the defendant companies in the *New York & New England Case* were jointly stockholders in the favored road, they did not own it. If they had owned it, I do not see that it could have been at all satisfactorily distinguished from this case; for, while it is true that there had formerly been a through routing between plaintiff and the defendant, and that fact was seized upon to relieve the commission of the difficulty of making a through route and a through rate for the parties, as they had only to put the old contract "in force again," it is not quite clear how the commission (or the court) has any more power to impose upon an unwilling party an old and abrogated contract than it has to make a new one. Neither is it quite plain how the ownership of all the stock in the favored line by the two defendant companies jointly operating it for their joint benefit is not in the practical operation of the freighting business, the same thing as if they had owned the road, either or both of them, as a part of their corporate belongings, as in this case the Iron Mountain does, although the technical difference in the tenure (if we may use that term somewhat untechnically) is apparent. The truth is that in the careful investigation of the cases on this subject which I have endeavored to make I have been occasionally perplexed to reconcile some of the expressions of opinion and judgments with each other, and all the courts and judges seem to find much difficulty in interpreting and applying this act of congress, which is in all its parts a new and experimental chapter of legislation. I desire, therefore, most carefully to limit this judgment to the precise boundaries of the facts in this case. It would be undoubtedly a complete answer to this bill to hold, as counsel for the defendants so strenuously argue we must hold, that the interstate commerce act has not at all interfered with the common-law right of contracting between connecting and independent carriers for a continuous through line, excluding all connecting competitors or rivals per force of the contract, just as if one owner absolutely owned the whole line. But this case does not require such a holding; nor do I think that technically there has been any adjudication to that effect, whatever may be said of expressions of opinion in that direction. It may be that it is a correct doctrine, but certainly that which we hold here can be, whether the other be or not. That about which I have no doubt on the facts of this case is that the Iron Mountain road, being the owner of a road of its own between Little Rock & Memphis, may prefer itself even to the extent of " crushing out the life of the plaintiff"—to use the language of the bill and of counsel—by that which was done in this case; that, whether done by a contract with other roads or without, it may refuse to through route with the plaintiff to points on its own road not reached by the plaintiff's road, or to recognize tickets issued by the plaintiff or others over plaintiff's roads to such points; and that, having this power of ownership to protect it in doing this, other roads are not at fault in yielding to its re-

fusal to recognize such tickets. It is a misnomer to call that which the Iron Mountain is doing "a discrimination" against the plaintiff under the interstate commerce act, or any other careful use of that word. It is not the case of a road preferring unjustly, unduly, and unreasonably one of two other equally adequate carriers from a given point to a given point, but the case of a competitor or rival so conducting its business and using its powers of ownership as to divert travel from its rival to itself. This is the case as between the Little Rock & Memphis road and the Iron Mountain road. As between the Little Rock and East Tennessee roads the case is that of preferring a road with through facilities to one with only local facilities,—a road that goes all the way to one going only part of the way; and the interstate commerce act does not forbid such a preference. Not having as long a track, the facilities offered by the plaintiff road for its through travel into Texas are not the same nor equal or equivalent to those offered by the Iron Mountain, and the discrimination it makes between the two cannot be, therefore, unjust, undue, or unreasonable in any proper sense, however disastrous to the plaintiff. Demurrer sustained, and the bill dismissed at the cost of the plaintiff. So ordered.