UNITED STATES v. MISSOURI PAC. RY. CO.

(Circuit Court, D. Kansas, S. D. September 14, 1894.)

1. INTERSTATE COMMERCE — DISCRIMINATING RATES — INJUNCTION — SUIT BY UNITED STATES.

Under the amendments by the acts March 2, 1889, and February 10, 1891, to the twelfth section of the interstate commerce law, authorizing and requiring the commission to execute and enforce the act, and providing that on the request of the commission it shall be the duty of any district attorney of the United States to institute in the proper court, and to prosecute under the direction of the attorney general of the United States, all necessary proceedings for the enforcement of the provisions of the act, and for the punishment of the violations thereof, the district attorney so requested may, under the direction of the attorney general, prosecute a suit in the name of the United States against a railroad company to enjoin it from discriminating in rates against one city in favor of another city.

2. SAME—PRELIMINARY INVESTIGATION BY COMMISSION.

Under such amendment, the formal preliminary investigation by the commission, authorized by the original act, is not necessary to vest jurisdiction in the court.

Suit by the United States against the Missouri Pacific Railway Company to enforce the provisions of the interstate commerce law.

Morris Cliggett, Asst. U. S. Atty. (W. C. Perry, U. S. Atty., of counsel).

J. H. Richards and C. E. Benton (B. P. Waggener, of counsel), for defendant.

WILLIAMS, District Judge. This case is submitted to the court upon a demurrer by the railway company to the bill of complaint. For the purposes of this submission, the facts alleged in the complaint are to be taken as true. The bill avers that:

"This action is brought by the authority of and under the direction of the attorney general of the United States, which said authority and direction is given and made in pursuance of the request of the interstate commerce commission of the United States that the United States attorney for the district of Kansas be directed and authorized to institute and prosecute all necessary proceedings, legal or equitable, for the enforcement of the provisions of the interstate commerce law against the defendant in relation to the matters hereinafter complained of."

The facts as set forth show the defendant railway company to be a common carrier, owning the lines of railway, and engaged in interstate commerce, between the cities of St. Louis, Mo., Wichita, Kan., and Omaha, Neb. The distance from St. Louis to Wichita is 458 miles; to Omaha, 501 miles. That all freight on defendant's lines to the two cities, going to and from St. Louis, passes over 232 miles of the same track, to Holden, Mo.; thence on separate lines to Wichita, 226 miles, to Omaha, 269 miles, being a haul of 43 miles less to Wichita than to Omaha. The bill further sets out in detail the schedule rates of freight to the two cities, showing that about 100 per cent. greater rates are charged to Wichita than to Omaha, on the same kind and classification of freights, and this while the shipments are made, as alleged, contemporaneously and under similar circumstances and conditions. It is further alleged that such rates are "unreasonable, excessive, and exorbitant," and are unjust discrimination against the city of Wichita; that the city of Wichita is a general distributing point for a large scope of country, embracing Central and Southern Kansas and the Indian Territory and Oklahoma; and that these exorbitant and unjust rates, and this unlawful discrimination against the city of Wichita and its distributing territory, cause great and irreparable prejudice and injury to the citizens of the United States and the public generally engaged in and affected by this interstate commerce between St. Louis and Wichita.

The provisions of the interstate commerce act upon which the charges are based are as follows:

Section 1 of "An act to regulate commerce" provides:

"That all charges made for any service rendered, or to be rendered, in the transportation of passengers or property as aforesaid, or in any connection therewith, or for receiving, delivering, storage, or handling such property shall be reasonable and just; and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

Section 2 provides:

"That if any common carrier subject to the provisions of this act shall directly or indirectly, by any special rate, rebate, drawback or other device, charge, demand, collect or receive from any person or persons a greater or less compensation for any services rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic, under substantially similar conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful."

Section 3 provides:

"That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or subject

to any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

If the allegations of the bill are true,—and they are so taken on demurrer,—there seems to be no room for doubt as to the violation of the law by the defendant company.

In the able briefs presented by counsel for the respective parties, the main point of controversy is—First, as to the right of the United States to maintain such a complaint against defendant in any form; and, second, as to the form in which that remedy is to be sought. Counsel for defendant very tersely state their case as follows:

"It is the theory of the defendant that the complainant has stated in its bill no just or sufficient facts to constitute a cause of action in its behalf against this defendant; that, as a matter of law, the United States of America has not, pursuant to 'An act to regulate commerce,' upon which this bill is founded, a cause of action against this defendant, and that this court has no jurisdiction, and cannot, by virtue of said act or other power or right, draw unto itself original and independent jurisdiction to try said cause."

In view of what, upon the face of the bill, would seem to be a very gross violation of the express prohibitions of the interstate commerce act, there certainly ought to be a remedy somehow and somewhere, and there ought to be a means of compelling defendant company to obedience to this law. The whole object, intent, and design of the interstate commerce act, with its sweeping clauses, and far-reaching and all-providing prohibitions, was to provide a safe, easy, and expeditious mode of reaching and preventing just such abuses as are charged in this bill. That relief may be had through a court of equity by injunction in such cases where the proper parties are before the court is abundantly supported by the authorities, and, as a general proposition, will hardly be questioned. "But," say the counsel for defendant, "we have here neither the proper parties nor the proper forum." By acts of Congress of March 2, 1889, and February 10, 1891, the twelfth section of the original act was amended by inserting after the first clause a provision which seems to have a special bearing on this question. The amendment is as follows:

"And the commission is hereby authorized and required to execute and enforce the provisions of this act; and upon the request of the commission, it shall be the duty of any district attorney of the United States to whom the commission may apply, to institute in the proper court, and to prosecute under the direction of the attorney general of the United States, all necessary proceedings for the enforcement of the provisions of this act, and for the punishment of all violations thereof; and the costs and expenses of such prosecution shall be paid out of the appropriation for the expenses of the courts of the United States," etc.

Now, these amendments mean something. They are couched in the language of a grant of new authority, and impose additional requirements as to the rights and duty of the commission to see to it that the law is enforced. And a significant fact in this connection is that this enactment follows and might appear to be the

logical sequence of the condition of things prior to the passage of the amendments, as shown by the report of the commission on the 1st day of December, 1891, and of the rulings of the courts in reference to the powers of the commission prior to the passage of these amendments; for, although the date of the report is after the passage of the amendments, it obviously relates to the condition of things prior to their passage.

In fifth annual report, 1891 (pages 14–19), the commission say:

"Though required to execute and enforce the provisions of the act, the commission, not being invested with power to enforce its own orders, is dependent for the efficiency of such execution and enforcement upon the courts. Within the year, and in compliance with the provisions of section 16 of the act, applications have been made by petition to the United States circuit court, and suits are now pending for the enforcement of the orders which, with a single exception, were made in previous years."

Attention is called to the fact that the orders of the commission made in previous years were then going through the slow process of enforcement by the courts. This is what is by the counsel for the defendant forcibly styled "the circumlocution of procedure in the hitherto established ways." To avoid this "circumlocution," and afford a speedy remedy, is obviously desirable, if it can be accomplished.

The abuse charged in the bill affects the public, and is pecuniary in its nature. The injury is suffered by a large number of citizens of the United States, through the alleged wrongdoing of the defendant in its quasi public character of a great corporation, engaged in interstate commerce, and under the direct protection, control, and prohibition of the laws of the United States. The United States is bound to its citizens for the enforcement even of the criminal prohibitions of the statute leveled at all violations of the duties owed to the public by such common carriers. Section 10 of the act makes any violation of the provisions of the act a misdemeanor, punishable by a fine not exceeding $5,000. The act was passed by the congress of the United States in pursuance of a right reserved by the constitution to regulate interstate commerce. With this right to legislate on the subject goes the corresponding duty of the United States to protect the public interests, when invaded by violations of the rules laid down and prescribed by this law. Here we have, by the averments of the bill, a case where thousands of her citizens, spread over a large territory, are being injured daily in their property rights and commercial interests by a violation of this law in many of its most important features. The only practicable remedy would seem to be by an equitable injunction against such practices, and it would appear eminently right and just that the government should move in the matter for the protection of its citizens, and to enforce obedience to its laws on the part of this great corporation, acting in its capacity of a quasi public servant. These views are in harmony with and supported by many adjudicated cases main-

taining the authority and duty of the sovereign to protect the public interests from unjust invasion and violation.

It is contended that, even if the United States might bring such a complaint, it could be done only by proceedings initiated through the commission; that the remedy provided by the act is exclusive, and that access to the courts in such cases is solely and only through and by way of the commission; that a formal preliminary investigation by the commission is essential to vest jurisdiction in the court. There is no question but that this is one way to reach the court; and it was at first, doubtless, deemed desirable as a ready mode of bringing the parties together, and enabling them, in a spirit of mutual concession, to adjust amicably and fairly their differences before the commission. But in practice it seems the inherent defects of the system were very soon felt, in that the decisions of the commission did not decide anything, and its orders were not enforceable except upon the voluntary submission of the offending party.

In Kentucky & I. Bridge Co. v. Louisville & N. R. Co., 37 Fed. 567, cited by counsel for defendant, Judge Jackson, in commenting on the relative powers of the commission and the courts, says:

"The act to regulate commerce does not undertake either to create an 'inferior court,' or to invest the commission appointed thereunder with judicial powers or functions. It is invested with only administrative powers of supervision and investigation, which fall far short of making it a court, or its action 'judicial,' in the proper sense of the term. Its action or conclusion upon matters brought before it for investigation is neither final nor conclusive; nor is it invested with any authority to enforce its decision or award. It hears, investigates, and reports upon complaints made before it, but subsequent judicial proceedings are contemplated and provided for, as the remedy for the enforcement of the order or report of the commission in all cases where the party against whom its decision is rendered does not yield voluntary obedience thereto. The act does not make the circuit court the mere executioner of the commissioner's order or recommendation, so as to impose upon the court a nonjudicial power. The suit in this court is, under the provisions of the act, an original and independent proceeding, in which the commissioner's report is made prima facie evidence of the matters or facts therein stated. The court is not confined to a mere re-examination of the case as heard and reported by the commission, but hears and determines the case de novo, upon proper pleadings and proofs; the latter including not only the prima facie facts reported by the commission, but all such other and further testimony as either party may introduce, bearing upon the matters in controversy."

This was in January, 1889, that Judge Jackson so plainly shows the defects of the commission as affording no final judicial settlement of controversies. As he well says, upon the circuit court of the United States "the jurisdiction is conferred of enforcing the rights, duties, and obligations" recognized by the interstate commerce act. When cases begun before the commission reach the courts, the only legal effect given by the act to the findings of the commission is to make them simply prima facie proof of the facts found, subject to be relitigated on a trial de novo as to the whole matter. This decision, and others in line with it, and the report of the com-

mission in 1889, heretofore cited, in which complaint is made of the want of any ready means of enforcement of the decisions or orders of the commission, may well have led congress to the enactment, on February 10, 1891, of the amendment to section 12 of the act, cited supra, and may throw some light, too, upon the proper construction of the amendment. When this amendment is considered, particularly in its historical connection, with the first clause of the act, it seems impossible to escape the conclusion that it was intended to confer upon the commission a power and a direction to avoid this happily styled "circumlocution of procedure in the hitherto established ways," and to afford a speedy and effective means of bringing the offenders immediately before courts of competent jurisdiction, to answer both civilly and criminally for their violation of the law. The language of the amendment is:

"And the commission is hereby authorized and required to execute and enforce the provisions of this act; and upon the request of the commission, it shall be the duty of any district attorney to whom the commission may apply to institute in the proper court, and to prosecute under the direction of the attorney general of the United States, all necessary proceedings for the enforcement of the provisions of this act, and for the punishment of all violations thereof."

This was after four years' trial of the practical operations of the commission, and painful experience of its inherent defects, so far as concerned the ultimate and final relief sought for by the honest citizen contending against the abuses practiced by these great corporations. The "preliminary investigation" was not only inefficient to right his wrong by any binding adjudications, but often, even where administered by the ablest jurists and best men in our country, was the means of piling up difficulties in his way, and creating new obstacles to the attainment of his rights. Now, this amendment, in just so many words, places the power in their hands, and imposes upon their conscience the duty, of seeing that this interstate commerce act shall be enforced; and, that there may be no delay in the matter, it is added: "And upon the request of the commission, it shall be the duty of any district attorney," etc., as cited supra. This request of the commission is alleged in the bill. It will be noted that the United States attorney, when called upon, is not merely to prosecute by indictment for the criminal feature of the violation of the law, which, of course, is done without the formal preliminary trial, but in the very same connection, and by the sanction of this same provision, he is "to institute in the proper court, and prosecute under the direction of the attorney general of the United States, all necessary proceedings for the enforcement of the provisions of this act, and for the punishment of all violations thereof." The language of this amendment clearly distinguishes the remedy from that provided in section 16, which is for an application to the court for the enforcement of the orders of the commission. This is an application to be made by the proper United States officer, on the request of the commission, "for the enforcement of the provi-

sions of this act, and for the punishment of all violations thereof." "Punishment" refers to the prosecution for misdemeanors, under section 10. The clause "provisions of this act" occurs a score of times throughout the act, and, except in a few instances where it is limited by the special matter to which it applies, is always used with reference to the great remedial features of the act,—the rights protected and the wrongs redressed by it. To reach a proper construction of this act and this amendment, it must be kept in view steadily that the object of the creation of this commission was not merely to afford, as was supposed, a ready method of settling controversies between individual shippers and the common carriers, but it had a far wider sweep and higher scope and design, which was by affirmative action on the part of the commission, on its own motion, to have instituted and carried through proceedings for the correction of abuses and the righting of wrongs, which affected the public commercial interests; and this even without the intervention of individual litigants at all. In section 16 it is made the "duty of the commission," and is "lawful for any company or person interested," to make the application there provided for. That is merely to carry out and have executed by the courts the orders already made by the commission. But the amendment to section 12 obviously contemplates the action of the commission, in causing original proceedings to be instituted in the proper courts for the enforcement of the act. Not only is the commission wanting in judicial authority to execute its decrees, but is also unlike the court, in that it is not to wait for injured parties to appear at its door to prefer their complaints. It is actively and aggressively to "inquire into the management of the business of all common carriers," and to keep itself "informed as to the manner and method of which the same is conducted," and to obtain from them "full and complete information necessary to enable the commission to perform and carry out the objects for which it was created." These extracts are all from the first clause of section 12 of the act, and following this is the next clause (quoted supra), which lays upon the commission broadly the duty to see to the enforcement of the wise and beneficent provisions of the act; and to that end, whenever a proper case is found, its duty is plainly to call upon the United States, through its appointed officer, the district attorney, to institute the necessary proceedings to right the wrongs and correct the abuses found to exist. The language of this clause is imperative,—"is authorized and required to execute and enforce." And, upon such request, the district attorney shall "institute in the proper court" the "necessary proceedings for the enforcement of the provisions of this act." In accomplishing the enforcement of the civil features of the act, the commission bears much the same relation to the court that the grand jury does in criminal matters. By the methods provided under the act,—and they are ample,—the commission is to keep itself thoroughly informed as to all the operations of every common carrier in the United States engaged in interstate commerce; and whenever, in the course of its

investigations, it discovers abuses which affect the public commercial interests injuriously, its duty is at once to have such abuses suppressed, and, if need be, to call in the strong arm of the government, through its appointed courts, to enforce the provisions of the law.

In this case the allegation is made that the action is prosecuted "in pursuance of the request of the interstate commerce commission of the United States," and "under direction of the attorney general of the United States." These prerequisites for the bringing of the action are safeguards against the indiscriminate and ill-advised prosecutions apprehended by counsel for defendant. It is not to be supposed that the commission and the attorney general of the United States would lend the sanction of their authority and direction to institute such proceedings, except in cases where, after due consideration, their judgments dictated the necessity for the interposition of the strong arm of remedial justice.

Without attempting to follow counsel in detail through the able and exhaustive presentation of cases in their briefs, the court is of the opinion that the course pursued in the bringing of this action is sustained by the great current of authority as applied to the acts of congress under which it is instituted. The invasion of great property rights, as distinguished from questions of mere sentiment or public policy, are in apt terms alleged in the bill. These property rights are such as, by the act of congress, the United States is bound to protect and enforce, and by a court of equity alone could any full and complete remedy be afforded. The demurrer to the complainant's bill is therefore overruled.