### TIFT et al. v. SOUTHERN RY. CO. et al.

(Circuit Court, S. D. Georgia, W. D. July 16, 1903.)

1. COMMON CARRIERS—DUTIES—DISCRIMINATION.

By the common law a common carrier was obliged to carry for all without unjust or unreasonable discrimination either in charges or in the facilities for actual transportation.

2. SAME—INTERSTATE COMMERCE.

The act to regulate interstate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), in so far as it inhibits carriers from the imposition of unjust or unreasonable rates, is an express adoption by the national legislature of the principles of the common law on this topic.

3. SAME—SPECIAL REMEDIES.

The special remedies afforded by this enactment were intended to supplement, ant not to supplant, the existing remedies.

4. SAME—JURISDICTION.
    The jurisdiction to enjoin unreasonable rates is based upon the fact that the subject-matter of the suit is a right asserted under the act of Congress.

5. SAME—INJUNCTION.
    It has long been the practice of courts of equity to grant injunction against extortionate charges and unjust discriminations in the business of common carriage.

6. SAME—MULTIPLICITY OF SUITS.
    When it appears that a large number of complainants have identical claims of right relative to the same subject-matter against a large number of defendants, public corporations, who are alleged to be in a combination to inflict on each and every complainant a common and simultaneous wrong, equity jurisdiction to avoid a multiplicity of suits will be maintained.

7. SAME—INJUNCTION.
    When a controversy between the parties relative to transportation rates is pending before the Interstate Commerce Commission, and no irreparable injury seems threatened, a court of equity, in advance of the action of the commission, will not ordinarily enjoin the enforcement of such rates.

(Syllabus by the Court.)

In Equity.

W. D. Ellis, W. A. Wimbish, and J. F. Boatwright, for complainants.

Ed Baxter, J. J. Spalding, W. E. Kay, A. S. Erwin, E. T. Brown, and W. P. Hill, for respondents.

SPEER, District Judge. This suit was brought by a large number of parties who are engaged in the manufacture of Georgia pine lumber. They term themselves members of the Georgia Sawmill Association. They sue as members of that association, and also in their separate or individual capacities. The suit is brought against the Southeastern Freight Association and against a number of railroads who are members thereof. Its purpose is to enjoin the defendants from enforcing an increase of two cents a hundred pounds in the freight rate on yellow pine lumber shipped from points in Georgia to Chattanooga and to Ohio river points and beyond. All of the complainants will be directly affected by the increased rate. All of the railway companies who are defendants, and the Southeastern Freight Association, which represents them all, have a direct interest in the result of the litigation.

It is alleged that the members of the Georgia Sawmill Association have values invested in their business of about $10,000,000. The value of the annual output is estimated at $7,000,000, and of this output a proportion amounting to not less than $2,500,000 in value is annually shipped to the Western points which will be affected by the proposed increase in rates. It is estimated that the increase of two cents a hundred pounds will amount to an aggregate of from $180,000 to $200,000 per annum in freight charges. It is alleged that this increase of rates is not only unjust and unreasonable, but

¶ 5. See Carriers, vol. 27, Cent. Dig. §§ 24, 27; Injunction, vol. 27, Cent. Dig. § 141.

will be destructive of the business of complainants in the Western market which they now supply with the product of their mills. Generally speaking, they insist that with the large additional burden imposed by the increase they will be unable to compete with dealers in fir, cedar, and the like, shipped to the same territory from the Pacific Slope. The increase is alleged to be so unreasonable as to violate the principles of the common law controlling the business of common carriers, which forbid unreasonable charges, and also violative of section 1 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]). It is charged to be the result of a combination and concerted action on the part of the defendant carriers, acting through the Southeastern Freight Association, which is alleged to be an irresponsible medium. This association is also charged to be an illegal combination or conspiracy in restraint of interstate trade, and in violation of the Sherman antitrust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). The bill prays that the defendants be enjoined from putting into effect the proposed increased rate, and also that existing rates be declared unjust and unreasonable in so far as they discriminate against yellow pine lumber in favor of other products, or against Georgia points in favor of other localities, and also in so far as they impose upon the complainants the burden of equipping cars at the expense of the shipper; that the Southeastern Freight Association be declared an illegal combination in restraint of interstate trade, and that the defendants be enjoined from continuing such illegal combination through that association in so far as concerns the rights and interests of the complainants.

A temporary injunction having been originally granted, and a rule nisi issued for the defendants to show cause why it should not be made permanent, a full hearing was had on the response to that rule. Demurrers to the bill for want of jurisdiction in the court as a court of equity and as a court of the United States were argued as a part of the hearing, and were overruled. The court maintained its jurisdiction to grant the relief sought in case it should be made to appear that the contention of complainants was meritorious.

The considerations submitted on the present hearing against this finding have not had the effect to change the opinion of the court as to the correctness of its conclusion. It has been from time immemorial a basic obligation of a common carrier to receive and transport all goods offered upon receiving reasonable compensation. It follows that unreasonable charges for common carriage may not be lawfully enforced. The difference in the obligation of a common carrier and that of a private individual is that the former has undertaken a duty to the public. Having undertaken that duty, it was settled by the common law that the common carrier must carry for all, to the extent of his capacity, without unjust or unreasonable discrimination either in charges or in the facilities for actual transportation. Atchison, etc., R. Co. v. Denver, etc., R. R. Co., 110 U. S. 667, 4 Sup. Ct. 185, 28 L. Ed. 291; Interstate Commerce Com. v. Cincinnati, etc., R. Co., 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243. If this was true at common law, how much stronger is the obligation

upon those vast public corporations of modern times, which, in consideration of valuable franchises granted by the public, are engaged in the stupendous business of transporting freight and passengers. So universal is the reliance of the public upon these instrumentalities of modern commerce that their operation is indispensable to the very existence of our modern social life. So fully is this recognized that the states have attempted their regulation through state railroad commissions, and the government of the United States, through the Interstate Commerce Commission, has sought to regulate the commerce between the states. This act of Congress, in so far as it inhibits carriers from the imposition of unjust and unreasonable rates, is an express adoption by the national legislature of the principles of the common law on this topic. 4 Thompson's Corporations, § 5547. Said Mr. Justice Brewer for the Supreme Court in Interstate Commerce Commission v. Cincinnati, etc., R. Co., 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243 (after stating that there were three courses open to Congress in regard to abuses of railroad companies in regard to interstate transportation):

"Congress might itself prescribe the rates; or it might commit to some subordinate tribunal this duty; or it might leave with the companies the right to fix rates, subject to regulations and restrictions, as well as to that rule which is as old as the existence of common carriers, to wit, that rates must be reasonable."

It is obvious that Congress adopted the method last mentioned. It thus created no new right in the shipper, but, by embodying his right by the common law in a law of the United States, Congress enabled him, in case of controversy, to apply for relief to a court having jurisdiction of controversies arising under the Constitution and laws of the United States. Clearly enough, the shipper of whom an unreasonable charge was exacted, had the right to appeal to a court for relief before the interstate commerce law was enacted. In Chicago, etc., R. Co. v. Osborne, 52 Fed. 912, 3 C. C. A. 347, Mr. Justice Brewer remarks, "He who felt aggrieved by a charge could always invoke the aid of the courts to protect himself against it." It is difficult to accept the argument that the interstate commerce act was intended to deprive the shipper of this right. The act was drawn with the broad purpose to facilitate interstate commerce and to restrict the arbitrary exercise of power by common carriers. It afforded special remedies for this purpose, but these appear to us to have been intended to supplement, and not to supplant, the remedies which the citizen already enjoyed. This view is borne out by section 22 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 387 [U. S. Comp. St. 1901, p. 3170]), which expressly preserves existing remedies, and by section 10 of Act March 2, 1889, c. 382, 25 Stat. 862 [U. S. Comp. St. 1901, p. 3172], which created the remedy by mandamus, and declared that it shall be cumulative only. This topic was discussed by Judge Hammond in the case of Little Rock, etc., R. Co. v. E. T., etc., R. Co. (C. C.) 47 Fed. 771. There the opinion of the learned judge is an explicit affirmance of this view. Cognate questions were passed upon in the following cases: U. S. v. Union Pac. R. Co., 160 U. S. 1, 16 Sup. Ct. 190, 40 L. Ed. 319; Kentucky &

Ind. Bridge Co. v. L. & N. R. Co. (C. C.) 37 Fed. 615, 2 L. R. A. 289; Chicago, etc., R. Co. v. Burlington, etc., R. Co. (C. C.) 34 Fed. 481; U. S. v. Missouri Pac. R. Co. (C. C.) 65 Fed. 903. From none of these cases is authority for the contrary view deducible. This being true, the diverse citizenship of the parties is not essential to jurisdiction. The jurisdiction is immovably based upon the fact that the subject-matter of the suit is a right claimed under the act of Congress known as the "Interstate Commerce Act," with its amendments. A lucid, and what seems conclusive, expression on this subject is that of Circuit Judge Taft in Toledo, etc., R. R. Co. v. Pa. Co. (C. C.) 54 Fed. 730, 19 L. R. A. 387:

"It is immaterial," said the learned judge, "what rights the complainant would have had before the passage of the interstate commerce law. It is sufficient that Congress, in the constitutional exercise of power, has given the positive sanction of federal law to the rights secured in the statute, and any case involving the enforcement of those rights is a case arising under the laws of the United States."

And said Chief Justice Marshall in Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204:

"We think, then, that when a question to which the judicial power of the Union is extended by the Constitution forms an ingredient of the original cause, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or law may be involved in it."

See, also, Kentucky & Ind. Bridge Co. v. L. & N. R. Co. (C. C.) 37 Fed. 567–615; Ex parte Lennon, 64 Fed. 320, 12 C. C. A. 134, and the same case, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110. In the latter case the opinion was rendered by Mr. Justice Brown, and that learned jurist quotes with approval from Tennessee v. Davis, 100 U. S. 257, 264, 25 L. Ed. 648, as follows:

"Cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted."

See, also, Oregon Short Line v. North. Pac. (C. C.) 51 Fed. 465; Allen & Lewis v. Oregon, etc., Co. (C. C.) 98 Fed. 16; De Bary Baya Merchants' Line v. Jacksonville, etc., R. Co. (C. C.) 40 Fed. 392; Louisville, etc., R. Co. v. Behlmer, 175 U. S. 648, 20 Sup. Ct. 209, 44 L. Ed. 309; Central Stock Yards Co. v. Louisville, etc., R. Co., 118 Fed. 113, 55 C. C. A. 63; Augusta, etc., R. Co. v. Wrightsville, etc., R. R. Co. (C. C.) 74 Fed. 522 (decision at Circuit by Judges Pardee and Speer); Oregon, etc., R. Co. v. Northern Pacific R. Co., 61 Fed. 158, 9 C. C. A. 409; Chicago, etc., R. Co. v. Burlington, etc., R. Co. (C. C.) 34 Fed. 481.

Then it is clear that the court of the United States has jurisdiction as such of this question arising under the Constitution and laws of the United States. It is equally clear that the court sitting in equity has jurisdiction to grant the specific relief prayed. It has long been the practice of courts of equity to grant injunction against extortionate charges and unjust discriminations. Menacho v. Ward (C. C.) 27 Fed. 529; Southern Express Co. v. Memphis, etc., R. Co. (C. C.)

8 Fed. 799, affirmed (C. C.) 10 Fed. 210; Coe v. Louisville, etc., R. Co. (C. C.) 3 Fed. 775.

It is, however, insisted that this power of the court cannot be exercised until the Interstate Commerce Commission has acted, but that commission is expressly denied the power of injunction, or any judicial power. This, it has been conclusively held, remains with the courts. Interstate Commerce Com. v. C., N. O. & T. P. R. Co., 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243. How, then, can it be said that the original and plenary power of the court of equity in such matters must be postponed to await the action of the Interstate Commerce Commission? It is true that the statute regulating interstate commerce permits a resort to the common-law action for damages for violation of its provisions, and it is urged that this remedy is exclusive. This does not follow. In the nature of things, there must be a vast variety of controversies in which the remedy at law on an action brought by the individual wronged is utterly inadequate to afford relief either to the individual or to multitudes who are in similar case with him. It is often in the power of a railroad company to greatly injure or wholly destroy one's business, or a general business of a particular class. In such case injunction would be the appropriate remedy. So an injunction is granted to prevent illegal discriminations and illegal exactions in excess of rates fixed by law. This is upon the ground, in part, that, the injury being a constantly recurring one, there is no adequate remedy at law. 1 High on Injunc. § 616; Rogers Loc. Wks. v. Erie Ry. Co., 20 N. J. Eq. 379. A discrimination based upon the larger business done by the favored shipper will be enjoined upon the ground of preventing a multiplicity of suits. 1 High on Injunc. § 621. It may safely be declared that a legislature will never be presumed to have denied by implication those general powers of a court of equity which have been ingrafted in our jurisprudence for "the corrections of that wherein the law (by reason of its universality) is deficient." Because one special remedy has been afforded, it does not follow that the general powers of equity are annulled. In the case of U. S. v. Union Pac. R. Co., 160 U. S. 1, 16 Sup. Ct. 190, 40 L. Ed. 319, it was held that an act of Congress which imposed certain duties upon all railroads and telegraph companies to which the United States had granted a subsidy, although giving a special remedy by mandamus, did not deny to the United States the remedy which could be attained by a bill in equity. And the court there announced the general doctrine:

"It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity."

See, also, Watson v. Sutherland, 72 U. S. (5 Wall.) 74, 79, 18 L. Ed. 580; Oelrichs v. Spain, 82 U. S. (15 Wall.) 211, 228, 21 L. Ed. 43. The last authority supports the proposition that, where a direct proceeding in equity will save time, expense, and a multiplicity of suits, and settle finally the rights of all concerned in one litigation, the court will entertain jurisdiction. In Scofield v. Lake Shore, etc., R. Co., 43 Ohio St. 571, 3 N. E. 907, 54 Am. Rep. 846, which was an

application for injunction against a railroad to prevent unjust discrimination in freight rates, the court said:

"We think the authorities abundantly show that in a case like the one at bar the plaintiff can seek relief by injunction, and that is an appropriate mode to determine the rights of the parties here, without first resorting to an action at law. The plaintiffs have a manufacturing capacity of 150,000 barrels per year. Shall they be compelled to bring a separate action for each car load? We think that plaintiffs have a clear and undoubted right to come into a court of equity and have the rights of the parties determined in a single action."

See, also, Butchers', etc., Stock Yards Co. v. Louisville, etc., R. Co., 67 Fed. 35, 14 C. C. A. 290.

A case of special value, decided at circuit by Judge McCrary, is that of Southern Express Co. v. Memphis, etc., R. Co., 8 Fed. 799. In this case an injunction by the express company against the defendant inhibiting the latter from charging more than fair and reasonable rates was granted. Again, in Chicago, etc., R. Co. v. Minn., 134 U. S. 418, 10 Sup. Ct. 702, 33 L. Ed. 970, the late Mr. Justice Miller, concurring in the opinion of the court, remarks:

"The proper, if not the only mode of judicial relief against the tariff of rates established by the Legislature or by its commission is by a bill in chancery asserting its unreasonable character and its conflict with the Constitution of the United States, and asking a decree of court forbidding the corporation from exacting such fare as excessive, or establishing its right to collect the rates as being within the limits of a just compensation for the service rendered."

It is scarcely necessary to cite authorities in support of the proposition that the question of reasonableness of the rate charged for transportation by a railroad company is peculiarly a question for judicial investigation and decision. The following authorities, however, will be instructive: Chicago, etc., R. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 33 L. Ed. 970; U. S. v. Missouri Pac. R. Co. (C. C.) 65 Fed. 903; Interstate Commerce Com. v. Western, etc., R. Co. (C. C.) 88 Fed. 186.

It is equally clear that in this case the court has jurisdiction, in order to avoid a multiplicity of suits. It would be a reflection upon American jurisprudence if such a multitude of complainants, who have identical claims of right relative to the same subject-matter against a multitude of defendants, all of whom are public corporations, who are alleged to be in a combination to inflict a common and simultaneous wrong on each and every complainant, should be driven to the cost and expense of maintaining separate actions at law for each instance of such alleged wrong. With the same show of reason it might be insisted that each shipper should be driven to his separate protest against such rates before the Interstate Commerce Commission. Modern jurisprudence would not tolerate methods so fraught with ruinous expense, harrassing and destructive delay.

It follows from these considerations that complainants' bill is properly before the court, and must be maintained to adjust the rights of the contending parties as they are finally to be ascertained. What those rights are in the present condition of the record may not be

readily discerned. This is the second hearing of this cause. On the former hearing, after full argument, the court dissolved the temporary restraining order which enjoined the respondents from enforcing the rates complained of, and in its decree used this language:

"In case the respondents shall enforce the rates complained of, and the complainants shall make proper application to the Interstate Commerce Commission to redress their alleged grievances, the court will entertain a renewed application on the record as made and such appropriate additions thereto as may be proposed by either party, enjoining the enforcement of such rates pending the investigation by the commission, unless otherwise dissolved; and on presentation to the court of the report of the commission such other action will be taken as will be conformable to law and the principles of equity."

Since then the respondents have enforced the rates which constitute the alleged grievance of the complainants. The complainants, it appears, have appealed to the commission, but the commission has not as yet taken action on such complaint. It is probable that this action will not be long delayed. It is probable that counsel in the cause will soon be enabled to present to the court the report of the commission. It is certain that this report will be of the utmost value for the proper determination of the important matter in controversy. In the meantime it does not appear that the injury complainants will sustain will be irreparable. The respondents are all solvent—probably all of them highly prosperous—railway corporations. It will be easily competent for the complainants to keep careful account of all the charges claimed to be unreasonable and excessive exacted by the defendants on shipments of lumber to the Western territory described in the bill. If their contention shall be maintained, it will be competent for the court in its final decree to direct the respondents, or either of them, to make restitution of sums thus exacted. Indeed, the learned special counsel for the respondents, by his statement made in judicio, binds his clients to promptly repay to the complainants all such sums in case they shall finally prevail. Nor is it likely that in the interval which shall remain before the commission will act there will ensue any serious impairment of the business of complainants, or either of them. It is easily conceivable that a case or cases of this general character might be presented on which it would seem obligatory on the court to grant an immediate injunction. Such injunctions, however, should not be granted save in case of grave and compelling exigency. Judicial action should be ever conservative, and rarely is such conservatism more plainly required than when the vast commercial operations involved in interstate transportation will be arrested or disturbed. In this case the duty to grant the extraordinary order sought does not now seem imperative. The court, therefore, in view of the record and of the considerations mentioned, will withhold further judicial action upon the application until properly apprised of the action of the Interstate Commerce Commission. When we shall have received the valuable assistance in the performance of the grave duty before us which must be expected from the conclusions of that authoritative and eminent body, such other and further action will be taken on this application as the law and the principles of equity will seem to direct.