

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Outdoor Media Displays Posters, Inc., H/N/C CBS Outdoor<br><br>Peticionario<br><br>v.<br><br>Billboard One, Inc.; Waldemar Fernández; Caribbean Billboard Corp.; Fulano y Mengano de Tal; Corporación 123, et als<br><br>Recurrido | Certiorari<br><br>2010 TSPR 108<br><br>179 DPR \_\_\_\_ |

Número del Caso: CC-2008-766

Fecha: 29 de junio de 2010

Tribunal de Apelaciones:

        Región Judicial de Caguas — Panel Especial

Juez Ponente:      Hon. Nélida Jiménez Velázquez

Abogado de la Parte Peticionaria:

        Lcdo. Carlos J. Fernández Lugo
        Lcda. Laura M. Vélez Vélez
        Lcda. Mariana S. Pérez Cordero

Abogado de la Parte Recurrida:

        Lcdo. Nelson Rivera Cabrera
        Lcdo. Alberto N. Balzac Colom

Materia: Interdicto Estatutario Bajo el Artículo 28 de la Ley Orgánica de ARPE

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Outdoor Media Displays Posters,
Inc., H/N/C CBS Outdoor

        Peticionario

                                CC-2008-0766

          v.

Billboard One, Inc.; Waldemar
Fernández; Caribbean Billboard
Corp.; Fulano y Mengano de Tal;
Corporación 123, et als

        Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 29 de junio de 2010.

El 6 de marzo de 2009 emitimos una Sentencia en el caso de marras. En ella, resolvimos que la presentación de una solicitud de permiso ante la Administración de Reglamentos y Permisos, en adelante ARPE, no paraliza la acción de *injunction* estatutario presentada por partes privadas al amparo del procedimiento especial contenido en el Artículo 28 de la Ley Núm. 76 de 24 de junio de 1975,[1] conocida como la Ley Orgánica de ARPE, en adelante Ley Núm. 76.

---

[1] 23 L.P.R.A. § 72.

En esta ocasión, reconsideramos la Sentencia que emitiéramos en aquel entonces.

I

El 20 de septiembre de 2006, CBS Outdoor presentó una demanda de *injunction* en contra de Billboard One; el Sr. Waldemar Fernández; Caribbean Billboard Corp. y otros, al amparo del Artículo 28 de la Ley Núm. 76; el Reglamento de Zonificación de Puerto Rico;[2] la Ley Uniforme de Rótulos y Anuncios de Puerto Rico,[3] en adelante Ley Núm. 355; y el Código Uniforme Sobre Rótulos y Anuncios de Puerto Rico,[4] en adelante Reglamento Núm. 6237.  En suma, CBS Outdoor alegó que los demandados operaban varios tableros de anuncios en el área del peaje de Caguas sin los permisos de uso expedidos por ARPe.[5]

El 29 de septiembre de 2006, el Tribunal de Primera Instancia expidió una orden provisional ex parte ordenando

---

[2] Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4 de 5 de noviembre de 2000.

[3] Ley Núm. 355 de 22 de diciembre de 1999.  9 L.P.R.A. § 51, *et seq.*

[4] Reglamento Núm. 6237 de 28 de diciembre de 2000, promulgado por ARPe.

[5] La demanda se presentó originalmente en el Centro Judicial de San Juan y, posteriormente, el caso fue trasladado al Centro Judicial de Caguas de conformidad con la Regla 3.2 de Procedimiento Civil.  32 L.P.R.A. Ap. III, Regla 3.2.

el cese y desista de la operación de los tableros en controversia. Asimismo, el foro primario citó a las partes a una vista para dilucidar la procedencia de un interdicto permanente.

El 4 de octubre de 2006, la codemandada Caribbean Billboard solicitó a ARPe la reapertura de su solicitud de permiso, la cual había sido iniciada en el 2003. Dos (2) días más tarde, el 6 de octubre de 2006, Caribbean Billboard solicitó la desestimación de la demanda de *injunction* presentada por CBS Outdoor. En su moción de desestimación, Caribbean Billboard alegó que el Tribunal de Primera Instancia no tenía jurisdicción para atender el asunto, pues el mismo le correspondía a ARPe. Ello, porque la agencia se encontraba considerando otra etapa del procedimiento administrativo en relación a los rótulos.

Por su parte, la codemandada Billboard One también solicitó la desestimación del interdicto por contar con los permisos y aprobaciones para dos (2) de los cuatro (4) letreros instalados. Además, indicó que había solicitado las correspondientes variaciones para los dos (2) letreros restantes, por lo que argumentó que procedía paralizar cualquier acción legal presentada en su contra.

En respuesta, CBS Outdoor presentó su contestación a la moción de desestimación presentada por Caribbean Billboard y a la presentada por Billboard One. En síntesis, alegó que no era de aplicación la doctrina de jurisdicción primaria.

El 9 de octubre de 2006, el Tribunal de Primera Instancia celebró la vista sobre el *injunction* permanente. A dicha vista comparecieron los demandados[6] y ARPE, quien como parte demandada, pero no emplazada, solicitó preliminarmente ser incluida como demandante. Sin embargo, posteriormente pidió comparecer sólo como parte interventora, conforme a lo dispuesto por la Regla 21.2 de Procedimiento Civil.[7] Luego, el 31 de octubre de 2006, el Tribunal de Primera Instancia accedió a la solicitud de intervención.

El 6 de diciembre de 2006, se celebró otra vista en la que se discutieron las mociones de desestimación presentadas por las codemandadas Caribbean Billboard y Billboard One. Finalmente, el 29 de mayo de 2007, el Tribunal de Primera Instancia emitió una Resolución y

---

[6] Los demandados solicitaron un término adicional para presentar mociones dispositivas.

[7] 32 L.P.R.A. Ap. III, R. 21.2.

Sentencia Parcial declarando con lugar las mociones de desestimación presentadas por las codemandadas y desestimó si perjuicio la acción presentada por CBS Outdoor. Fundamentó su decisión en la doctrina de jurisdicción primaria concurrente e indicó que el asunto requería la pericia administrativa y el conocimiento especializado de ARPE. El foro primario sopesó las circunstancias del caso para determinar la inconveniencia de considerar los méritos del mismo, por lo que entendió que procedía su abstención.[8]

Inconforme, CBS Outdoor presentó un recurso de apelación ante el Tribunal de Apelaciones. Por su parte, ARPE compareció ante el foro apelativo intermedio mediante un alegato de parte interventora. Sostuvo, afín con CBS Outdoor, que debido a la naturaleza de la causa de acción que surge del Artículo 28 de la Ley Núm. 76 y de los factores que deben probarse para que prospere un *injunction* estatutario en virtud de dicho artículo, la controversia a resolverse se limita a una cuestión estrictamente de derecho que no requiere la pericia de ARPE. Por tal razón,

_____

[8] El Tribunal de Primera Instancia, en lo pertinente, aclaró que no procedía la desestimación de la acción bajo el fundamento de que el procedimiento especial quedó paralizado con la presentación del permiso ante ARPE. Ello, pues dicha disposición sólo aplica cuando ARPE solicita la intervención de un tribunal contra un alegado infractor.

ARPE alegó que el Tribunal de Primera Instancia erró al aplicar la doctrina de jurisdicción primaria concurrente al caso de autos.

El 20 de mayo de 2008, el Tribunal de Apelaciones dictó una Sentencia confirmando al Tribunal de Primera Instancia. En ella expresó que la jurisprudencia de este Tribunal no puede interpretarse para entender "que el foro de instancia, al considerar los factores y circunstancias del caso ante su consideración, esté impedido de aplicar la doctrina de agotamiento de remedios o jurisdicción primaria, si así lo estima conveniente".[9] El foro apelativo intermedio entendió que las circunstancias del presente caso no sólo requieren la pericia de ARPE, sino que también requieren el pronunciamiento de dicha agencia sobre la implantación efectiva de la política pública relacionada con la Ley Núm. 355. Además, reconoció que no existían "circunstancias especiales que merecieran la intervención [del Tribunal de Primera Instancia] para paralizar permanentemente el uso de anuncios o rótulos por Caribbean y Billboard One".[10]

---

[9] *Véase*, Sentencia del Tribunal de Apelaciones de 20 de mayo de 2008, KLAN07010648, pág. 26.

[10] *Íd.*, pág. 29.

De igual forma, el Tribunal de Apelaciones entendió que de conformidad con la Ley Núm. 355 y el Reglamento Núm. 6237, basta con la mera presentación de una solicitud de permiso para que: (1) ARPᴇ se vea imposibilitada de imponer multas; y (2) se paralice el trámite de cualquier acción legal que pueda ser presentada por ARPᴇ. Por ello, el foro apelativo intermedio concluyó que, en estos casos, no tiene ningún sentido jurídico ni resulta cónsono con el propósito de la Ley Núm. 355 que un ciudadano particular pueda solicitar un *injunction* al amparo del Artículo 28, mientras que ARPᴇ esté impedida de hacerlo, siendo dicha agencia la facultada en ley para velar por el cumplimiento de la Ley Núm. 355.

Nuevamente insatisfecho, el 26 de agosto de 2008, CBS Outdoor acudió ante nos mediante un recurso de *certiorari*. En su recurso señaló la comisión del error siguiente:

**Incidió el Tribunal de Apelaciones al aplicar al presente caso, la doctrina de jurisdicción primaria concurrente, basándose en que no tiene sentido jurídico permitir que un ciudadano solicite un *injunction* estatutario al amparo del artículo 28 de la Ley Orgánica de la ARPE, 23 L.P.R.A. § 72, para evitar violaciones a la Ley Núm. 355 de 22 de noviembre de 1999, 9 L.P.R.A. § 51 et seq., según enmendada, mejor conocida como la Ley Uniforme de Rótulos y Anuncios de 1999 y al Código Uniforme Sobre Rótulos y Anuncios de Puerto Rico, Reglamento Núm. 6237 promulgado por ARPE […] en circunstancias**

**en las cuales la ARPE está impedida de acudir al Tribunal para dicho propósito.**

Evaluados los planteamientos, acordamos en aquel entonces expedir el recurso y resolverlo de inmediato, de acuerdo con la Regla 50 del Reglamento de este Tribunal.[11] Así las cosas, el 6 de marzo de 2009, emitimos una Sentencia en la que resolvimos que la disponibilidad del remedio establecido por el Artículo 28 de la Ley Núm. 76 no está sujeta a las doctrinas de jurisdicción primaria y agotamiento de remedios administrativos, de acuerdo a lo resuelto en Municipio de Caguas v. AT&T, 154 D.P.R. 401 (2001) y en Plaza Las Américas v. H&N, 166 D.P.R. 631 (2005). Además, concluimos que las alegaciones de CBS Outdoor, a los efectos de que los demandados habían construido y operaban varios tableros de anuncios sin los permisos gubernamentales correspondientes, eran suficientes para invocar el mecanismo establecido en el Artículo 28 de la Ley Núm. 76. Ello, porque la aludida disposición estatutaria provee un mecanismo para que ARPE o cualquier persona legitimada pueda paralizar cualquier construcción o uso ilegal mediante una solicitud de interdicto provisional ante el Tribunal de Primera Instancia.

---

[11] 4 L.P.R.A Ap. XXI-A.

En relación a si la presentación de una solicitud de permiso ante ARPᴇ paraliza la acción del *injunction* estatutario incoada por un particular, concluimos en aquel entonces que "erró el Tribunal de Apelaciones al apoyar su decisión en una analogía con un reglamento. Si un reglamento no puede privar a un ciudadano de un derecho estatutario, menos puede una analogía con un reglamento".[12] En apoyo a dicha conclusión expresamos lo siguiente:

> El hecho de que ARPE sea la agencia con jurisdicción para reglamentar y regular todo lo relacionado con la instalación de rótulos y anuncios no puede significar que automáticamente toda causa de acción presentada en los tribunales al amparo del referido Artículo 28 que conlleve alegaciones de violación de las disposiciones estatutarias y reglamentarias aplicables a tableros de anuncios tiene que ser desestimada y referida a ARPE bajo el fundamento de que tales controversias requieren la pericia de dicha agencia. Así, pues, y contrario a lo que concluyó el foro apelativo, la alegación de violaciones a la Ley Núm. 355, 9 L.P.R.A. sec. 51 *et seq*, y el Código Uniforme Sobre Rótulos y Anuncios de Puerto Rico no es razón ni justificación suficiente para aplicar la doctrina de jurisdicción primaria concurrente en contravención a lo resuelto por este Tribunal en Las Américas v. H & N, *supra*, y Mun. de Caguas v. AT&T, *supra*.[13]

---

[12] Outdoor Media Display Posters, Inc., H/N/C CBS Outdoor v. Billboard One, Inc. *et al.*, Sentencia emitida el 6 de marzo de 2009, pág. 8.

[13] *Íd.*

Oportunamente, la codemandada Caribbean Billboard presentó ante nos una Moción de Reconsideración. En ella argumentó que la Ley Núm. 76 no aplica al presente caso por ser una ley general y que los asuntos aquí planteados están regidos de forma especial por la Ley Núm. 355 y por el Reglamento Núm. 6237. En síntesis, Caribbean Billboard arguyó que ARPE es el foro primario para atender el presente caso, pues la Asamblea Legislativa así lo dispuso expresamente mediante ley y reglamento especial.

Por su parte, CBS Outdoor compareció oponiéndose a la reconsideración. La demandante de autos señaló que la presente causa de acción versa sobre el Artículo 28 de la Ley Núm. 76 y no sobre la Ley Núm. 355. CBS Outdoor argumentó que la Sección 15.01 del Reglamento Núm. 6237 se refiere al procedimiento que puede iniciar ARPE en casos de infracciones a la Ley Núm. 355. No obstante, según CBS Outdoor, ni el Reglamento Núm. 6237 ni la Ley Núm. 355 disponen que la presentación de una solicitud ante la agencia paralizará los efectos del *injunction* estatutario solicitado por una parte privada en contra de otra. Asimismo, argumentó que las aludidas disposiciones tampoco derogan o prohíben el uso por partes privadas de los procedimientos establecidos por la Ley Núm. 76 en casos de

infracciones a las disposiciones de la Ley Núm. 355 y del Reglamento Núm. 6237.

Examinados los planteamientos de ambas partes, el 17 de abril de 2009, emitimos una Resolución acogiendo la solicitud de reconsideración presentada por Caribbean Billboard. Tanto CBS Outdoor como la codemandada Caribbean Billboard han presentado sus posturas sobre la presente controversia.[14] Con el beneficio de sus respectivas comparecencias procedemos a resolver.

## II

Nos corresponde determinar si la presentación de una solicitud de permiso de instalación o de un anteproyecto para solicitar una variación de conformidad con la Ley Núm.

---

[14] El 5 de agosto de 2009 emitimos una Resolución concediéndole un término de diez (10) días a la codemandada Billboard One para que presentara su alegato en este caso. Oportunamente, Billboard One presentó una "Moción en Cumplimiento de Resolución". En ella, expresó que no presentaría alegato debido a que no opera, no es dueña, ni posee estructuras de publicidad en el lugar objeto de la reclamación de CBS Outdoor. Por ello, argumentó que no procede reclamación alguna en su contra. En consecuencia CBS Outdoor presentó su oposición y expuso que Billboard One no informó lo anterior a CBS Outdoor ni a ningún tribunal durante todo el trámite procesal del caso; no anejó ningún documento que sostenga que no posee las estructuras; tampoco solicitó ante nos la sustitución de parte para que se incluyera en el pleito a la nueva entidad a quién, alegadamente, le traspasó la titularidad de los tableros de anuncio; y ha participado activamente de todos los procedimientos de este pleito.

355, paraliza la acción del *injunction* estatutario incoada por vecinos o colindantes al amparo del procedimiento especial del Artículo 28 de la Ley Núm. 76 y, si en consecuencia, debe aplicarse la doctrina de jurisdicción primaria concurrente. Veamos.

## A. Doctrina de Jurisdicción Primaria

El término "jurisdicción" significa el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir casos o controversias.[15] Conforme nuestro ordenamiento jurídico los tribunales de Puerto Rico son de jurisdicción general.[16] Por ello, como norma general, los tribunales pueden entender en cualquier materia sobre la cual no se les haya privado de jurisdicción.[17] En cambio, una agencia administrativa sólo tiene los poderes otorgados expresamente por su ley habilitadora y aquellos que sean indispensables para llevar a cabo sus deberes y

---

[15] ASG v. Mun. San Juan, 168 D.P.R. 337, 343 (2006); Rodríguez v. Overseas Military, 160 D.P.R. 270, 277 (2003); Roberts v. U.S.O. Council of PR, 145 D.P.R. 58, 67 (1998); Gearheart v. Haskell, 87 D.P.R. 57, 67 (1963).

[16] *Véanse*, Roberts v. U.S.O. Council of PR, *supra*, pág. 69; Junta de Directores Condominio Montebello v. Fernández, 136 D.P.R. 223, 230 (1994).

[17] *Íd.*

responsabilidades.[18] De ahí que hayan instancias en las que los tribunales y las agencias puedan entender en un mismo asunto; en cuyo caso, es aquí donde la doctrina de jurisdicción primaria juega un papel importante.

La doctrina de jurisdicción primaria es una de creación jurisprudencial.[19] Esta doctrina no priva de jurisdicción al foro judicial,[20] sino atiende una cuestión de prioridad de jurisdicción.[21] Su objetivo medular es promover la armonía entre los tribunales y los organismos administrativos.[22] En específico, la doctrina de jurisdicción primaria dispone cuál foro, si el judicial o el administrativo, debe atender

---

[18] *ASG v. Mun. San Juan*, *supra*, pág. 343; Raimundi v. Productora, 162 D.P.R. 215, 224 (2004).

[19] Texas & Pacific Railway Co. v. Abilene Cotton Oil Company, 204 U.S. 426 (1907); Tift v. Southern Ry. Co., 123 F.2d 789 (S.D. Ga., 1903). *Véase además*, D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. Ed., Colombia, Forum, 2001, Sec. 8.3, pág. 433.

[20] Junta de Directores Condominio Montebello v. Fernández, *supra*, pág. 233.

[21] Mun. Arecibo v. Mun. Quebradillas, 163 D.P.R. 308, 326 (2004) (*citando a* E.L.A. v. 12,974.78 Metros Cuadrados, 90 D.P.R. 506, 511 (1964)).

[22] E.L.A. v. 12,974.78 Metros Cuadrados, *supra*, pág. 512.

inicialmente una controversia.[23]  Para ello, dicha doctrina tiene dos (2) vertientes: (1) la exclusiva; y (2) la concurrente.

La primera vertiente de la doctrina de jurisdicción primaria se manifiesta cuando una ley o estatuto le confiere jurisdicción a determinado organismo administrativo e indica que éste será el único foro con facultad para atender, inicialmente, determinada controversia.  En estas ocasiones se habla de jurisdicción primaria exclusiva.[24]  Esta vertiente "persigue suplir un procedimiento ágil y sencillo, poco costoso, que atienda el asunto sin el rigor procesal que generalmente ha caracterizado a los tribunales tradicionales".[25]

Así, cuando una ley le confiere jurisdicción a una agencia administrativa es ésta quien debe dilucidar inicialmente determinada controversia y no el foro judicial.  En estas instancias los tribunales están

---

[23] Ortiz v. Panel F.E.I., 155 D.P.R. 219, 242 (2001); E.L.A. v. 12,974.78 Metros Cuadrados, supra, pág. 511.

[24] Semidey Ortiz v. Consorcio Sur-Central (ASIFAL), 2009 T.S.P.R. 184, pág. 22, res. el 22 de diciembre de 2009 Véanse además, Junta de Directores Condominio Montebello v. Fernández, supra, pág. 233; D. Fernández Quiñones, op. cit., Sec. 8.4, pág. 437.

[25] Junta de Directores Condominio Montebello v. Fernández, supra, pág. 233.

impedidos de ejercer su autoridad, pues la propia ley ha establecido la exclusividad del foro administrativo.[26] Claro está, la jurisdicción primaria exclusiva no soslaya terminantemente la revisión judicial, sólo la pospone hasta que el organismo administrativo emita su decisión final.[27]

Por su parte, la segunda vertiente de la doctrina de jurisdicción primaria se manifiesta cuando el foro judicial y el foro administrativo comparten la facultad para dilucidar un mismo asunto. En estas ocasiones se habla de verdadera jurisdicción primaria o jurisdicción primaria concurrente.[28] El fundamento de esta vertiente estriba en la deferencia judicial que merecen las agencias administrativas dada su preparación, especialización, pericia y conocimiento para atender determinados asuntos.[29]

---

[26] Mun. Arecibo v. Mun. Quebradillas, *supra*, pág. 327.

[27] Semidey Ortiz v. Consorcio Sur-Central (ASIFAL), *supra*, pág. 22.

[28] "La jurisdicción federal ha reconocido que la aplicación de la doctrina de jurisdicción primaria parte de la premisa de que originalmente la reclamación pertenece al tribunal, pero la misma contiene cuestiones de la especial competencia del organismo y por ello se difiere el ejercicio de jurisdicción hasta tanto resuelva la agencia administrativa". D. Fernández Quiñones, op. cit., Sec. 8.3, pág. 435, nota 51. *Véanse además*, Mun. Arecibo v. Mun. Quebradillas, *supra*, pág. 326.

[29] Mun. Arecibo v. Mun. Quebradillas, *supra*, pág. 326.

Así, al aplicar la doctrina de jurisdicción primaria concurrente los tribunales, por deferencia, aplazan las acciones ante su consideración y las dirigen al foro administrativo para que se puedan obtener los beneficios que se derivan de la interacción con dicho foro especializado.[30] Dicho de otro modo, cuando se aplica la mencionada vertiente, los tribunales, por deferencia, le ceden al foro administrativo la oportunidad inicial de adjudicar la controversia presentada y reservan su intervención hasta después de que la agencia emita su determinación final. A esos efectos, el profesor D. Fernández Quiñones ha indicado lo siguiente:

> La doctrina de jurisdicción primaria está confeccionada para ofrecerle guía y orientación a los tribunales en la determinación de cuándo deben abstenerse de ejercer jurisdicción hasta tanto la agencia resuelva. Su razón de ser es promover las relaciones más adecuadas entre los tribunales y las agencias administrativas. La aplicación de la doctrina significa la exclusión de la acción judicial para así obtener los presuntos beneficios que se derivan de la interacción con el ente administrativo especializado. El punto de partida es la existencia de una jurisdicción concurrente entre el tribunal y la agencia. Empero, se le cede la primacía al organismo administrativo. Este acto sólo connota un aplazamiento de interacción por parte del Tribunal hasta que se proceda a resolver finalmente por la agencia. El ejercicio de

---

[30] Ortiz v. Panel F.E.I., *supra*, pág. 243 (*citando a* D. Fernández Quiñones, op. cit., Sec. 8.3, págs. 434-435).

jurisdicción del Tribunal no ha sido eliminado, sino meramente aplazado.[31]

No obstante lo anterior, hemos indicado que la aplicación de la doctrina de jurisdicción primaria concurrente no es automática. Esta vertiente no debe aplicarse "cuando la naturaleza de la causa de acción presentada y el remedio solicitado destacan que no se presentan cuestiones de derecho que exijan el ejercicio de discreción y de peritaje administrativo".[32] En otras palabras, cuando la cuestión que se plantea es "puramente judicial".[33]

Cónsono con lo anterior, en reiteradas ocasiones hemos resuelto que la doctrina de jurisdicción primaria concurrente ha de aplicarse cuando "las cuestiones de hecho que han de ser consideradas requieren el ejercicio de la discreción administrativa o aplicación del conocimiento especializado que ésta posee".[34] Es necesario también que la agencia pueda otorgar los remedios solicitados por la

---

[31] D. Fernández Quiñones, op. cit., Sec. 8.3, págs. 434-435.

[32] Ortiz v. Panel F.E.I., *supra*, pág. 246 (*citando a* D. Fernández Quiñones, op. cit., Sec. 8.4, págs. 443-444).

[33] *Íd.*

[34] Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906, 921 (2001).

parte reclamante.  "De este modo se evita la duplicidad de esfuerzos y la posibilidad de determinaciones incompatibles o contradictorias".[35]

No existe una fórmula precisa para determinar cuándo aplicar o no alguna excepción de la doctrina de jurisdicción primaria concurrente.[36]  Por ello, los tribunales deben hacer una evaluación pragmática y "sopesar todos los factores y circunstancias que apuntan o no a la conveniencia de permitir que la reclamación se dilucide inicialmente en el foro administrativo".[37]  Entre los factores a ponderarse para aplicar o no la doctrina de jurisdicción primaria se encuentran los siguientes: (a) el peritaje de la agencia sobre la controversia; (b) la complejidad técnica o especializada de la controversia; (c) la conveniencia o necesidad de una adjudicación rápida; (d) la conveniencia de utilizar técnicas más flexibles de adjudicación; (e) lo adecuado del remedio administrativo.[38]

---

[35] *Íd.*, pág. 921 (*citando a* Igartúa de la Rosa v. A.D.T., 147 D.P.R. 318, 332 (1998)).

[36] Ortiz v. Panel F.E.I., *supra*, pág. 245, nota 36.

[37] Mun. de Caguas v. AT&T, 154 D.P.R. 401, 411 (2001).

[38] Estos factores son corolarios de los sugeridos en Davis and Pierce, Administrative Law Treatise, Sec. 14.1, pág. 272.

En fin, la aplicación o no de esta segunda vertiente "impone que se pondere y determine si es imprescindible y necesario que se resuelva [a] favor de que intervenga inicialmente la agencia".[39]

## B. Artículo 28 de la Ley Orgánica de ARPᴇ, Ley Núm. 76

El Artículo 28 de la Ley Núm. 76, *supra*,[40] permite que se insten recursos de interdicto, *mandamus*, nulidad y

_____

[39] D. Fernández Quiñones, op. cit., Sec. 8.4, pág. 443.

[40] En lo pertinente, el Artículo 28 de la Ley Núm. 76 dispone lo siguiente:

El Administrador o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina, que resultare o pudiera resultar especialmente perjudicado por cualesquiera de dichas violaciones, además, de los otros remedios provistos por ley, podrá entablar recurso de interdicto, *mandamus*, nulidad o cualquier otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construído, o cualquier edificio o uso, hechos o mantenidos en violación de este capítulo o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración.

Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en ley para evitar infracciones a este capítulo y a todos los reglamentos relacionados con la misma, para evitar cualquier estorbo (*nuisance*) o adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada. A estos fines, se provee el siguiente procedimiento especial:

cualquier otra acción adecuada o remedio disponible en ley para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio o uso que fuera construido o mantenido en violación a la Ley Núm. 76 y a los reglamentos adoptados

---

(a) Cuando, por persona o autoridad con derecho a ello, se presente petición jurada ante un juez del Tribunal de Primera Instancia de Puerto Rico identificando un edificio o casa, rótulo o anuncio, alegando que el mismo está siendo construido, instalado, eregido [sic], exhibido, mantenido, ampliado, reparado, trasladado, alterado, reconstruido, o usado, o demolido, en violación de este capítulo o de los reglamentos, mapas o planos aplicables especificando los actos constitutivos de dicha violación e identificando la persona o personas que estén cometiendo la violación en cuestión, el tribunal expedirá una orden provisional dirigida a dichas personas requiriéndoles para que paralicen inmediatamente, bajo apercibimiento de desacato la obra, uso o instalación a que la petición se refiere, hasta tanto se ventila judicialmente su derecho.

[…]

(c) **Tendrán derecho a presentar la petición los colindantes y vecinos que pudieren ser afectados por la violación y los funcionarios designados por los organismos gubernamentales que insten la acción**, así como ingenieros o arquitectos que actúen como proyectistas o inspectores de la obra.

[…]

(f) La resolución será emitida por el tribunal dentro de los diez (10) días siguientes a la celebración de la vista y podrá ordenar la paralización permanente de los actos alegados en la petición o dejar definitivamente sin efecto la orden provisional.[…] 23 L.P.R.A. § 72.

conforme a dicha ley.[41]    Este procedimiento especial es un mecanismo estatutario, independiente, sumario y limitado.[42] Su propósito es viabilizar la efectividad de las leyes y reglamentos de planificación cuyo cumplimiento ARPE viene obligada a fiscalizar.[43]

Las partes con legitimación activa para incoar el procedimiento especial son las siguientes: (1) el Administrador de ARPE; (2) el Secretario de Justicia; (3) los colindantes y vecinos que pudieren ser afectados por la violación; (4) los funcionarios designados por los organismos gubernamentales que insten la acción; y (5) los ingenieros o arquitectos que actúen como proyectistas o inspectores de la obra.[44]

Una vez se solicita correctamente el procedimiento especial, el tribunal expedirá una orden de paralización provisional hasta que se ventile judicialmente el derecho de la parte que lo invocó.[45]    Además, el tribunal fijará la

---

[41] *Véase*, A.R.Pe. v. Rodríguez, 127 D.P.R. 793, 808 (1991).

[42] Plaza las Américas v. N&H, 166 D.P.R. 631, 646 (2005); Luan Investment Corp. v. Román, 125 D.P.R. 533, 544 (1990).

[43] A.R.P.E. v. Rivera Morales, 159 D.P.R. 429, 443 (2003).

[44] 23 L.P.R.A. § 72.

[45] *Íd.*

fecha para la celebración de una vista en la cual, de determinar que se cumplieron los requisitos procesales y que ocurrió la alegada infracción, expedirá una orden de paralización permanente del uso u obra, sujeta a las formas y condiciones que especifica el Artículo 28 de la Ley Núm. 76, *supra*.

Las órdenes de paralización emitidas al amparo del procedimiento especial constituyen un remedio con cierta afinidad a los *injunctions* preliminares. Sin embargo, no gozan de la finalidad que caracteriza a los *injunctions* permanentes.[46] Las órdenes de paralización emitidas al amparo del procedimiento especial son un remedio estatutario e independiente del *injunction* tradicional.[47]

Los requisitos del *injunction* tradicional son más rigurosos que los requisitos exigidos al *injunction* estatutario.[48] Para invocar el *injuntion* estatutario

---

[46] Plaza las Américas v. N&H, *supra*, págs. 649-650.

[47] *Íd.*, pág. 650.

[48] Para emitir un *injunction* preliminar deben considerarse los criterios siguientes: (1) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne en académica de no concederse el *injunction*; y (5) el posible impacto sobre el interés

reconocido en el Artículo 28 de la Ley Núm. 76, *supra*, sólo se requiere que una parte legitimada alegue, por petición jurada, lo siguiente: (1) que determinada persona está realizando un uso u obra; (2) que dicha conducta viola una ley o reglamento de planificación; y (3) que ARPE tiene la obligación de velar por el cumplimiento de dicha disposición.[49]

Al *injunction* tradicional se le pueden oponer las defensas tradicionales de la equidad.[50] En cambio, las órdenes de paralización solicitadas al amparo del procedimiento especial, contenido en el Artículo 28 de la

---

público del remedio que se solicita. Municipio de Loíza v. Suncs. Suárez, 154 D.P.R. 333, 367 (2001). *Véanse además*, Pérez Vda. De Muñiz v. Criado Amunategui, 151 D.P.R. 355, 372 (2000); Mun. de Ponce v. Gobernador, 136 D.P.R. 776, 784 (1994); P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200, 202 (1975). Homologable rigurosidad comparte el *injunction* permanente, pues el tribunal debe considerar los requisitos subsiguientes: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público involucrado; y (4) el balance de equidades. Pérez Vda. de Muñiz v. Criado Amunategui, 151 D.P.R. 355, 372, nota 11 (2000). Los criterios antes enumerados no son una serie de requisitos absolutos, sino directrices que guían la discreción del tribunal al determinar si la evidencia justifica el interdicto. Plaza Las Américas v. N&H, *supra*, pág. 644; Delgado v. Cruz, 27 D.P.R. 877, 880 (1919).

[49] Plaza Las Américas v. N&H, *supra*, pág. 646; A.R.P.E. v. Rivera Morales, *supra*, pág. 445.

[50] Plaza Las Américas v. N&H, *supra*, pág. 650.

Ley Núm. 76, no surgen de la equidad y han de evaluarse con miras a la letra de dicho artículo y su jurisprudencia interpretativa.[51]

En Municipio de Caguas v. AT&T Wireless PCS, Inc.,[52] atendimos una reclamación de unos vecinos y el Municipio de Caguas instada al amparo del procedimiento especial contenido en el Artículo 28 de la Ley Núm. 76. En ella, los demandantes alegaron que la construcción de una torre de telecomunicaciones provocó daños a ciertas residencias y, a su vez, ponía en peligro la vida de los vecinos. Asimismo, indicaron que no se les notificó ni fueron parte de los procedimientos para la obtención del permiso de construcción ante ARPE. En consecuencia, los peticionarios solicitaron lo siguiente: (1) que se emitiera un *injunction* preliminar y permanente para que se prohibiera la continuación de la construcción de la torre y se ordenara reinstalar el terreno a su estado original, a los fines de evitar que ocurrieran más deslizamientos de tierra; (2) indemnización de los daños y perjuicios sufridos por la alegada obra ilícita; y (3) que se declarase

---

[51] A.R.P.E. v. Rivera Morales, *supra*, pág. 445.

[52] 154 D.P.R. 401 (2001).

inconstitucional la reglamentación que autorizaba las construcciones de las torres.

Por su parte, la parte demandada pidió la desestimación de la acción por entender que la solicitud era académica, pues las torres ya habían sido construidas. De igual forma, alegó que no se habían agotado los remedios administrativos.

Luego de celebrada una vista evidenciaria, el Tribunal de Primera Instancia ordenó, preliminarmente, la paralización de todo tipo de construcción hasta la celebración del juicio en su fondo. De acuerdo con la prueba admitida, el foro primario concluyó que la salud y la seguridad de los vecinos demandantes estaban en riesgo. Ello, debido al grave problema de deslizamiento de tierra y al agrietamiento de sus residencias, que eran consecuencia aparente de los movimientos de tierra y de los trabajos realizados en el terreno de la demandada. En consecuencia, emitió el *injunction* preliminar según solicitado por los peticionarios.

Inconforme, la demandada acudió al entonces Tribunal de Circuito de Apelaciones. Dicho tribunal dejó sin efecto el *injunction* preliminar y desestimó la demanda por no haberse agotado los remedios administrativos. Sobre el

particular, el foro apelativo intermedio expresó que "[l]as personas perjudicadas por una determinación tomada por ARPE, en procedimientos en el que ellas no fueron partes, no están libres de recurrir directamente al foro administrativo. El recurso que les asiste es la intervención y solicitud de reconsideración ante la propia agencia".[53]

Insatisfechos con dicha determinación los peticionarios acudieron ante nos. Luego de "sopesar todos los factores y circunstancias pertinentes del caso" revocamos al entonces Tribunal de Circuito de Apelaciones. Indicamos, en aquella ocasión, que no había que agotar los remedios administrativos bajo las circunstancias del referido caso. Ello, luego de considerar múltiples factores, entre los que se encuentran los siguientes: (1) los reclamos de los peticionarios rebasaban la autoridad y pericia de ARPE por tratar en gran medida sobre la indemnización de daños y perjuicios; (2) había un reclamo de inconstitucionalidad de una reglamentación, por lo cual la intervención inicial de la agencia no era necesaria; (3) la existencia de una amenaza de daño irreparable a los

---

[53] Municipio de Caguas v. AT&T Wireless PCS, Inc., *supra*, pág. 406.

peticionarios sin la intervención del tribunal; (4) la intervención de los vecinos podía ser denegada por la agencia; (5) los reclamantes no fueron parte del proceso administrativo ni fueron notificados del procedimiento en un momento oportuno; y (6) la realidad económica de los vecinos afectados.

Señalamos en aquel entonces que la impugnación del otorgamiento del permiso de construcción "de ordinario puede ser propio para la aplicación de la doctrina de jurisdicción primaria, pues su consideración puede requerir del empleo de conocimiento especializado y pericia administrativa".[54] Sin embargo, favorecimos la intervención judicial debido a las circunstancias particulares del caso.[55]

Por su parte, en Plaza Las Américas v. H&N, *supra*, examinamos la facultad del Tribunal de Apelaciones para dejar sin efecto una orden de paralización permanente dictada de conformidad con el Artículo 28 de la Ley Núm. 76. El caso tuvo lugar cuando ARPE aprobó un anteproyecto

---

[54] Municipio de Caguas v. AT&T Wireless PCS, Inc., *supra*, pág. 417, nota 2.

[55] *Íd.*, págs. 417-418.

de construcción para la remodelación de un edificio comercial cercano al centro comercial Plaza Las Américas.

Al igual que en Municipio de Caguas, *supra*, en Plaza Las Américas, *supra*, las peticionarias del interdicto no fueron parte del procedimiento administrativo y tampoco fueron notificadas de la Resolución de ARPE. Sin embargo, consiguieron copia de ella e instaron una apelación impugnando los aludidos permisos ante la Junta de Apelaciones Sobre Construcciones y Lotificaciones, en adelante la Junta de Apelaciones. En dicha apelación alegaron que el proyecto afectaba adversamente sus propiedades. Por ello, solicitaron la paralización de los procedimientos administrativos. No obstante, los procedimientos ante ARPE continuaron y, eventualmente, el permiso de construcción fue aprobado por dicha agencia.

Así las cosas, los peticionarios solicitaron el auxilio de jurisdicción de la Junta de Apelaciones. Alegaron que la demandada había comenzado la construcción y que ello implicaba una actuación sin el debido permiso de ARPE o con un permiso ilegal.

Posteriormente, dichos peticionarios instaron ante el Tribunal de Primera Instancia el procedimiento especial al amparo del Artículo 28 de la Ley Núm. 76. En consecuencia,

el foro primario emitió una orden provisional paralizando el proyecto y señaló la correspondiente vista. Luego de celebradas sendas vistas, el foro primario emitió una Sentencia mediante la cual paralizó el proyecto en cuestión y ordenó el agotamiento de los remedios administrativos para hacer valer los derechos reclamados.

Inconforme, la parte cuyo proyecto fue paralizado acudió al Tribunal de Apelaciones. Dicho tribunal dejó sin efecto la orden de paralización de la construcción emitida por el Tribunal de Primera Instancia. Insatisfechos, los peticionarios acudieron ante nos.

En aquella ocasión resolvimos que la vigencia post-apelativa de una orden de paralización permanente, instada al amparo del Artículo 28 de la Ley Núm. 76, debe adjudicarse mediante normas y métodos análogos a los que rigen la paralización de los interdictos en la etapa apelativa. Además, determinamos que "las peticionarias no venían obligadas a agotar los remedios administrativos antes de invocar el Artículo 28".[56] Ello, pues "nuestras expresiones previas con respecto al carácter sumario e independiente del Artículo 28 indicaban que no era

---

[56] Plaza Las Américas v. H&N, *supra*, pág. 658.

necesario agotar los remedios administrativos en las circunstancias de este litigio".[57]

En fin, tanto en Municipio de Caguas, *supra*, como en Plaza Las Américas, *supra*, nos inclinamos a favorecer la intervención judicial debido a las circunstancias particulares de ambos casos.

**C. Ley Uniforme de Rótulos y Anuncios, Ley Núm. 355 y el Código Uniforme de Rótulos y Anuncios, Reglamento Núm. 6237**

La Ley Uniforme de Rótulos y Anuncios de Puerto Rico, Ley Núm. 355, fue aprobada con el propósito de actualizar las normas para la utilización de rótulos y anuncios, y promover la libertad de expresión mediante el uso efectivo de estos medios de comunicación.[58] Mediante esta legislación se fusionó "en un solo cuerpo de ley todas las normas que controlarán en adelante la instalación de rótulos y anuncios" en Puerto Rico.[59] La Ley Núm. 355 permite que ARPE controle, reglamente y fiscalice de forma más efectiva el procedimiento para otorgar permisos para instalar y distribuir rótulos y anuncios en nuestra jurisdicción. A tenor con las facultades concedidas por la

---

[57] *Íd.* (Énfasis nuestro).

[58] Artículo 2 de la Ley Núm. 355 de 22 de diciembre de 1999.

[59] *Véase*, Exposición de Motivos de la Ley Núm. 355, *supra*.

Ley Núm. 355 y la Ley Núm. 76, ARPE creó el Código Uniforme sobre Rótulos y Anuncios, Reglamento Núm. 6237, mediante el cual se implementa el propósito de la Ley Núm. 355.

La Ley Núm. 355 requiere la obtención de un permiso para la instalación de rótulos y anuncios. Por su parte, el Reglamento Núm. 6237, en su Sección 7.00, establece el procedimiento a seguir para la obtención de dichos permisos. En lo pertinente, el Reglamento Núm. 6237 dispone que una vez presentada la solicitud de permiso ARPE tendrá un término máximo de cuarenta y cinco (45) días para aprobar o denegar dicha solicitud. En caso de que ARPE no actúe dentro del aludido término, se entenderá aprobada la solicitud de permiso y deberá expedirse el marbete correspondiente, salvo que se trate de una variación o de un permiso de construcción, en cuyo caso el término será extendido a sesenta (60) días.[60]

La Ley Núm. 355 le concede autoridad a ARPE para ordenar que se remuevan rótulos o anuncios ilegales, así como para confiscar los mismos. Además, ARPE puede instar cualquier acción legal adecuada para implantar y fiscalizar

---

[60] *Véase*, Sección 7.02 del Reglamento Núm. 6235, *supra*.

las disposiciones de la Ley Núm. 355 e imponer una multa a cualquier persona que infrinja la misma.[61]

El procedimiento para la imposición de multas requiere que ARPE emita una notificación dirigida al dueño del rótulo o anuncio ilegal y al dueño u ocupante del predio donde ocupa el mismo. Previo a la imposición de una multa ARPE tiene que conceder un término de diez (10) días para que se corrija la violación. **Sin embargo, la persona o entidad puede conformar el rótulo o anuncio a lo exigido por ARPE; presentar un anteproyecto para solicitar una variación; o presentar una solicitud de permiso de instalación, en cuyo caso, ello "será suficiente para detener el proceso de imposición de multas o paralizar el trámite de cualquier acción legal presentada".**[62] Ello, para

_____

[61] 9 L.P.R.A. § 56b.

[62] *Íd.* (Énfasis nuestro). En específico, el Artículo 29 de la Ley Núm. 355 dispone lo siguiente:

Penalidades o Acciones Legales

ARPE podrá imponer a cualquier persona que infringiere las disposiciones de esta Ley una multa de conformidad con el Reglamento de Multas Administrativas de ARPE. También podrá instar cualquier acción legal adecuada para implantar y fiscalizar las disposiciones de esta Ley.

ARPE notificará al dueño del rótulo o anuncio ilegal y al dueño u ocupante del predio donde esté ubicado el mismo, de su intención de imponer

los fines de la imposición de multas o acciones legales

entabladas por ARPE. Así lo dispone el Artículo 29 de la

Ley Núm. 355. Similar disposición contiene el Reglamento

Núm. 6237 a los fines de la paralización de acciones

legales y multas.[63] La paralización de dichas acciones

---

multas por violaciones a las disposiciones de esta
Ley y concederá un término de diez (10) días para
que se corrija la violación a la misma, antes de
imponer las mismas.

**Para los fines de este Artículo, el conformar
el rótulo o anuncio a lo exigido por ARPE o
presentar el correspondiente anteproyecto en caso
de solicitarse una variación; o presentar una
solicitud de permiso de instalación del rótulo o
anuncio afectado por la notificación será
suficiente para detener el proceso de imposición
de multas o paralizar el trámite de cualquier
acción legal presentada.** (Énfasis nuestro).

[63] La Sección 15.01 del Reglamento Núm. 6237, *supra*, dispone
lo siguiente:

Disposiciones Generales

1. ARPE podrá imponer a cualquier persona que
infringiere las disposiciones de la Ley Núm. 355
del 22 de diciembre de 1999 y este Código una
multa de conformidad con el Reglamento de Multas
Administrativas de ARPE. También podrá instar
cualquier acción legal adecuada para implantar y
fiscalizar las disposiciones de la Ley y de este
Código.

2. ARPE notificará al dueño del rótulo o anuncio
ilegal y al dueño u ocupante del predio donde esté
ubicado el mismo, de su intención de imponer
multas por violaciones a las disposiciones de la
Ley y de este Código y concederá un término de
diez (10) días para que se corrijan las

legales responde a que **la Ley Núm. 355 establece, expresamente, que debe ser interpretada a favor de la concesión de autorizaciones para la instalación de rótulos y anuncios**, siempre que no se ponga en riesgo la seguridad de la ciudadanía.[64]

D.   **Interpretación de Estatutos**

Cuando una ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir su espíritu.[65]   Cuando el legislador se ha manifestado en un

---

violaciones, antes de imponer las multas.  Dicha notificación podrá realizarse mediante un boleto de cortesía el cual será suficiente para cumplir con esta Sección.

3. Para los fines de este Código, el conformar el rótulo o anuncio a lo exigido por ARPE o presentar el correspondiente anteproyecto en caso de solicitarse una variación; o presentar una solicitud de permiso de instalación del rótulo o anuncio afectado por la notificación será suficiente para detener el proceso de imposición de multas o paralizar el trámite de cualquier acción legal presentada.  De ocurrir una denegación de la solicitud los trámites iniciados y detenidos mediante las disposiciones de esta Sección, se continuarán en el lugar donde fueron detenidos.

[64] Artículo 2 de la Ley Núm. 355, *supra*.

[65] 31 L.P.R.A. § 14.  *Véase además*, Román v. Superintendente de la Policía, 93 D.P.R. 685, 688 (1966).

lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de la intención legislativa.[66]

Si existe alguna ambigüedad en el texto de la ley, el tribunal debe asegurar el cumplimiento de los propósitos legislativos.[67] En la interpretación específica de una ley es un principio cardinal de hermenéutica considerar los propósitos perseguidos por la Asamblea Legislativa para asegurar el resultado originalmente querido.[68] Además, los tribunales debemos considerar la naturaleza del problema o la necesidad que se pretendía atender a través de la legislación.[69] En suma, la interpretación que se le otorgue al estatuto debe ser la que mejor responda a los propósitos que persigue.[70]

En el cumplimiento de esta función es necesario que en la interpretación se armonicen, en la medida de lo posible, "todas las disposiciones de la ley con el propósito de

---

[66] Alejandro Rivera v. E.L.A., 140 D.P.R. 538, 545 (1996).

[67] Rivera Figueroa v. A.A.A., 2009 T.S.P.R. 162, págs. 20-21, res. el 23 de octubre de 2009.

[68] Vázquez v. A.R.P.E., 128 D.P.R. 513, 523 (1991); Chase Manhattan Bank v. Mun. de San Juan, 126 D.P.R. 759, 766 (1990).

[69] Véase, Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991).

[70] Departamento Hacienda v. Telefónica, 164 D.P.R. 195, 204 (2005).

lograr una interpretación integrada, lógica y razonable de la intención legislativa".[71] Las disposiciones de una ley no deben ser interpretadas de forma aislada, sino analizadas en conjunto tomando en consideración todo su contexto de manera integral.[72]   Por ello, debemos rechazar una interpretación literal de un texto legal que conduzca a un resultado que no puede haber sido el que quería lograr el legislador.[73]

III

¿La presentación de una solicitud de permiso de instalación o de un anteproyecto para solicitar una variación de conformidad con la Ley Núm. 355, paraliza la acción legal presentada por vecinos o colindantes al amparo del procedimiento especial del Artículo 28 de la Ley Núm. 76?   Antes de contestar esta interrogante es imperativo aclarar lo siguiente.

Nos encontramos ante un caso en el que existen varias disposiciones legales en aparente conflicto.   Nos referimos al Artículo 28 de la Ley Núm. 76 *vis a vis* el Artículo 29

---

[71] Matos Matos v. Junta Examinadora, 165 D.P.R. 741, 748-749 (2005).

[72] *Véase*, Mun. de San Juan v. Banco Gubernamental de Fomento, 140 D.P.R. 873 (1996).

[73] Pueblo v. Seda, 82 D.P.R. 719, 725 (1961).

de la Ley Núm. 355 y la Sección 15.01 del Reglamento Núm. 6237, respectivamente.[74]

Por un lado, y en lo aquí pertinente, el Artículo 28 de la Ley Núm. 76 legitima a los vecinos y a ARPᴇ a instar un *injunction* ante el Tribunal de Primera Instancia cuando una persona realice un uso u obra en violación de cualquier ley o reglamento implementado por ARPᴇ. Esta es una disposición de carácter general que proviene de la Ley Orgánica de ARPᴇ, aprobada el 24 de junio de 1975.

Por otro lado, el 22 de diciembre de 1999, veinticuatro (24) años más tarde, la Asamblea Legislativa aprobó la Ley de Rótulos y Anuncios de Puerto Rico, Ley Núm. 355, con el propósito de **actualizar y fusionar** "en un solo cuerpo de ley **todas las normas** que controlarán en adelante la instalación de rótulos y anuncios".[75] Como puede apreciarse, esta es una disposición de carácter especial diseñada, específicamente, para atender los

---

[74] Debido a la similitud del Artículo 29 de la Ley Núm. 355 con la Sección 15.01 del Reglamento Núm. 6237 enfocaremos nuestra discusión en el Artículo 29, entendiéndose que lo dicho para este artículo le es aplicable a la Sección 15.01 del Reglamento Núm. 6237, salvo que otra cosa se diga en contrario.

[75] Exposición de Motivos de la Ley Núm. 355, *supra*.

asuntos relacionados a la instalación de rótulos y anuncios en Puerto Rico.

En lo aquí pertinente, el Artículo 29 de la aludida Ley Núm. 355 dispone que el presentar una solicitud de permiso de instalación o un anteproyecto para solicitar una variación, es **suficiente para paralizar el trámite de cualquier acción legal presentada** o el proceso de imposición de multas. Como veremos, esta disposición carece de un lenguaje claro e inequívoco sobre su alcance. Ello, pues cabe preguntarse ¿a qué se refiere dicha disposición al enunciar "cualquier acción legal presentada"? ¿Quién o quiénes pueden presentar tal acción legal? ¿La frase "cualquier acción legal presentada" incluye las acciones entre vecinos o colindantes al amparo del Artículo 28 de la Ley Núm. 76? Para contestar estas interrogantes debemos examinar el texto del Artículo 29 en conjunto con la ley de la cual emana. Ello, pues las disposiciones de una ley no deben ser interpretadas de forma aislada, sino analizadas en conjunto tomando en consideración todo su contexto de forma integral.

Comenzamos nuestro análisis, pues, examinando el contenido del Artículo 29 de la Ley Núm. 355 para luego analizarlo de forma integral con el resto de la Ley Núm.

355. Una vez realizado dicho análisis, examinaremos el alcance de la Ley Núm. 355 en relación al procedimiento especial del Artículo 28 de la Ley Núm. 76.

El Artículo 29 se compone de tres (3) párrafos. El primero, dispone que ARPᴇ puede imponer una multa o instar cualquier acción legal adecuada para implantar y fiscalizar las disposiciones de dicha ley. El segundo, establece que ARPᴇ notificará a las personas allí enunciadas de su intención de imponer multas, entre otros. Finalmente, el tercer párrafo dispone que "[p]ara fines de este Artículo, el conformar el rótulo o anuncio a lo exigido por ARPᴇ" o el presentar un anteproyecto para una variación, o una solicitud de permiso de instalación del rótulo o anuncio, "será suficiente para paralizar el trámite de cualquier acción legal presentada".[76]

¿Cuál fue la intención del legislador al insertar la palabra "cualquier" en el texto del Artículo 29 de la Ley Núm. 355? De entrada, debemos destacar que la palabra "cualquier" se utiliza como un pronombre indeterminado cuyo significado es "sea el que fuere", "alguno",[77] "cualquier

---

[76] Art. 29 de la Ley Núm. 355, *supra*.

[77] La palabra "alguno" o "alguna" se utiliza como adjetivo "que se aplica indeterminadamente a una o varias personas o cosas respecto a otras". Diccionario de la Lengua

persona indeterminada".[78]  Por ello, al insertar tal palabra es posible que el legislador tuviere la intención de que se paralice todo tipo de acción, sea judicial o administrativa, indistintamente de quién fuere el promotor de la misma.

Ahora bien, otra exégesis parecería surgir al interpretar la palabra "cualquier", exclusivamente, en el contexto del Artículo 29.  Ello, pues la frase "[p]ara fines de este Artículo" aparenta condicionar la paralización de "cualquier acción legal presentada" a que sea ARPE la promotora de dicha acción y no otra parte. Esto, pues el Artículo 29 versa sobre penalidades o acciones legales a ser llevadas por ARPE.

Sin embargo, semejante lectura del Artículo 29 no tiene cabida al examinar las demás disposiciones de la Ley Núm. 355 y el efecto que dicha interpretación tendría cuando una parte privada invoque el procedimiento especial del Artículo 28 de la Ley Núm. 76.[79]  En específico, **una**

---

Española, Real Academia Española, Vigésima Primera Edición, Madrid, 1992, pág. 71.

[78] Diccionario de la Lengua Española, op. cit., pág. 428.

[79] Adviértase, que al interpretar una ley hay que tomar en consideración las leyes o disposiciones *in pari materia*, o complementarias, que puedan ayudar a esclarecer cuál fue la verdadera intención legislativa.  Zambrana Maldonado v.

**interpretación restrictiva del Artículo 29 choca con el propósito de permitir la paralización de las acciones legales presentadas. La aludida paralización responde a que la Ley Núm. 355 dispone, expresamente, que debe ser interpretada a favor de la concesión de autorizaciones para la instalación de rótulos y anuncios.[80] Ello es así, pues tal disposición persigue que aquellas personas que actúen al margen de la ley, al instalar rótulos o anuncios de forma ilegal, acudan con prontitud ante ARPe para obtener los permisos necesarios para realizar dicha actividad. De esta forma, el legislador entendió que se logra insertar a los infractores en la legalidad del ordenamiento jurídico.**

Asimismo, se facilita que ARPe cumpla con su obligación de

_____

E.L.A., 129 D.PR. 740, 750 (1992). Tanto el _injunction_ estatutario del Artículo 28 de la Ley Núm. 76, como el Artículo 29 de la Ley Núm. 355 son mecanismos para viabilizar la efectividad de las leyes y reglamentos de planificación, cuyo cumplimiento ARPe viene obligada a fiscalizar. Por ello, debemos tomar en consideración ambas leyes para despuntar la verdadera intención de la Asamblea Legislativa. _Íd_.

[80] Artículo 2 de la Ley Núm. 355, _supra_. En lo pertinente, dicho artículo dispone lo siguiente: "las disposiciones de esta Ley deberán ser interpretadas a favor de la concesión de autorizaciones para la instalación de rótulos y anuncios siempre y cuando no se ponga en riesgo la seguridad de nuestra ciudadanía".

reglamentar y controlar la instalación de rótulos y anuncios en Puerto Rico.[81]

De conformidad con lo antes expuesto, concluimos que la presentación de una solicitud de permiso de instalación o de un anteproyecto para solicitar una variación, de acuerdo con la Ley Núm. 355, paraliza la acción legal presentada por los vecinos o colindantes al amparo del procedimiento especial del Artículo 28 de la Ley Núm. 76.

Resolver lo contrario vaciaría de contenido jurídico el Artículo 29 de la Ley Núm. 355, pues sólo se paralizaría el procedimiento especial cuando éste sea invocado por ARPE y no cuando lo soliciten las demás personas allí legitimadas. Ello, en contravención a los propósitos que inspiraron la creación de la Ley Núm. 355, a saber: facilitar que ARPE cumpla con su obligación de reglamentar y controlar la instalación de rótulos y anuncios a través de la paralización de cualquier acción legal presentada como

---

[81] *Véase*, Exposición de Motivos de la Ley Núm. 355, *supra*. Cabe añadir, que la propia Exposición de Motivos de la Ley Núm. 355 apercibe que el legislador, luego de estudiar las leyes y reglamentos aplicables a la instalación de rótulos y anuncios, entendió que era necesario actualizar las normas que rigen dicha materia. En consecuencia, la Asamblea Legislativa fusionó "en un solo cuerpo de ley todas las normas que controlarán en adelante la actividad de instalación de rótulos y anuncios". De esta manera, se persigue brindar "certeza a las personas que se dedican a esta actividad comercial". *Íd*.

mecanismo para introducir a los infractores a la regulación de ARPᴇ; promover la libertad de expresión mediante el uso efectivo de rótulos y anuncios; y promulgar normas flexibles y razonables que permitan el uso efectivo de estos medios de comunicación.[82]  Subrayamos que debemos rechazar una interpretación literal de un texto legal que conduzca a un resultado que no puede haber sido el que quería lograr el legislador.[83]

**Adviértase, que el propósito del procedimiento especial del Artículo 28 de la Ley Núm. 76 es viabilizar la efectividad de las leyes y reglamentos cuyo cumplimiento ARPᴇ viene obligada a fiscalizar.[84] Bajo las circunstancias del presente caso dicho propósito no se adelanta, pues al aprobar la Ley Núm. 355 el legislador entendió, en lo pertinente, que la manera de viabilizar la efectividad de la Ley de Rótulos y Anuncios radica en la paralización de las acciones legales presentadas.** Ello, claro está, siempre que se cumpla con lo dispuesto en el Artículo 29 de la Ley Núm. 355.  Dicha ley representa la última voluntad

---

[82] *Véase*, Artículo 2 de la Ley Núm. 355, *supra*, intitulado "Declaración de Política Pública".

[83] Pueblo v. Seda, supra, pág. 725.

[84] A.R.P.E. v. Rivera Morales, *supra*, pág. 443.

de la Asamblea Legislativa en cuanto a la forma de hacer cumplir la regulación sobre rótulos y anuncios cuyo cumplimiento ARPE viene obligada a fiscalizar.

Nótese, que no se trata aquí de que una parte esté impedida de incoar el procedimiento especial del Artículo 28 de la Ley Núm. 76. Cualquier parte legitimada puede invocar dicho procedimiento y obtener el *injunction* preliminar, allí reconocido, para impedir que quien opere un rótulo o anuncio sin los permisos de ARPE continúe semejante práctica. De lo que se trata aquí, es que por virtud de la Ley Núm. 355, cuando la parte contra la cual se expidió el *injunction* preliminar del Artículo 28 de la Ley Núm. 76 presente una solicitud de permiso o un anteproyecto para una variación ante ARPE, los efectos de dicho *injunction* quedarán paralizados hasta que ARPE resuelva definitivamente la solicitud en controversia. Si ARPE deniega la solicitud, los efectos del *injunction* preliminar o los trámites iniciados y detenidos mediante el Artículo 29 de la Ley Núm. 355 y/o la Sección 15.01 del Reglamento Núm. 6237 continuarán en el lugar donde fueron detenidos.[85] De esta manera se logra cumplir con los

---

[85] *Véase*, Sección 15.01 del Reglamento Núm. 6237, *supra*.

propósitos perseguidos por la Asamblea Legislativa al crear la Ley Núm. 355.

Distinto fuera el caso si, conforme al procedimiento especial del Artículo 28 de la Ley Núm. 76, el Tribunal ya hubiese expedido el *injunction* permanente en la vista que para esos efectos celebrara. Ello, pues ya no se trataría de una acción legal "presentada", según exige el Artículo 29 de la Ley Núm. 355, sino de una acción legal "finalizada" indemne a la paralización del mencionado Artículo 29. En tal coyuntura, la parte afectada por el *injunction* permanente no puede beneficiarse de la paralización creada por la presentación de una solicitud ante ARPE. Dicha parte tendrá que cumplir con el referido *injunction* permanente hasta que ARPE resuelva favorablemente la solicitud y le otorgue el permiso correspondiente.

**En síntesis, la presentación de una solicitud de permiso de instalación o de un anteproyecto para solicitar una variación, de conformidad con la Ley Núm. 355, paraliza la acción legal presentada por los vecinos o colindantes al amparo del procedimiento especial del Artículo 28 de la Ley Núm. 76.** A esta conclusión llegamos luego de considerar, no sólo el historial legislativo de la Ley Núm. 355 y las disposiciones legales en controversia, sino la naturaleza

del problema que se pretendía atender a través de la legislación. De esta forma, se logra asegurar el resultado originalmente querido por la Asamblea Legislativa. Asimismo, se armonizan todas las disposiciones legales en aparente conflicto para lograr una interpretación integrada, lógica y razonable de la intención legislativa.

IV

En el caso ante nos, CBS Outdoor invocó el procedimiento especial del Artículo 28 de la Ley Núm. 76 en contra de Billboard One y Caribbean Billboard. El Tribual de Primera Instancia expidió un *injunction* preliminar ordenando el cese y desista de la operación de los tableros en controversia. Además, fijó la fecha para la celebración de la vista para discutir si procedía el *injunction* permanente.

Cuatro (4) días antes de dicha vista, Caribbean Billboard presentó una solicitud de permiso ante ARPe para la operación de los tableros. De igual forma, Billboard One solicitó ante ARPe las correspondientes variaciones para los letreros en controversia.

Las alegaciones de CBS Outdoor, a los efectos de que los demandados habían construido y operaban varios tableros de anuncios sin los permisos gubernamentales

correspondientes, eran suficientes para invocar el procedimiento especial del Artículo 28 de la Ley Núm. 76. De igual forma, ante las circunstancias particulares del caso ante nos, la disponibilidad del remedio establecido por el Artículo 28 de la Ley Núm. 76 no está sujeta a las doctrinas de jurisdicción primaria concurrente y agotamiento de remedios administrativos, de acuerdo a lo resuelto por este Tribunal en Municipio de Caguas v. AT&T, *supra*, y en Plaza Las Américas v. H&N, *supra*.

No obstante lo anterior, tanto la presentación del permiso por parte de Caribbean Billboard, como la solicitud de variaciones ante ARPE presentada por Billboard One, son suficientes para paralizar los efectos del *injunction* preliminar emitido al amparo del Artículo 28 de la Ley Núm. 76. Asimismo, son suficientes para paralizar los procedimientos judiciales hasta que ARPE resuelva definitivamente las aludidas solicitudes. Ello, de conformidad con lo dispuesto en el Artículo 29 de la Ley Núm. 355.

Reconsideramos, pues, lo resuelto en nuestra Sentencia de 6 de marzo de 2009 en el caso de marras, por virtud de la cual resolvimos que la presentación de una solicitud de permiso ante ARPE, de conformidad con la Ley Núm. 355 no

paraliza el *injunction* estatutario incoado por un particular. Resolvemos que dicha acción sí paraliza la acción del procedimiento especial incoada por vecinos y colindantes, no bajo el fundamento de que tales controversias requieren de la pericia de ARPE, o de que la alegación de violaciones a la Ley Núm. 355 es razón suficiente para aplicar la doctrina de jurisdicción primaria concurrente, **sino bajo el fundamento de que, según el análisis de las disposiciones legales en controversia, la propia Ley Núm. 355 dispone que con la presentación de una solicitud de permiso o de un anteproyecto para una variación ante ARPE se paraliza cualquier acción legal presentada. Esto, indistintamente de quién sea el promotor de la misma.**

Por ello, erró el Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia por entender que ante las circunstancias del presente caso era de aplicación la doctrina de jurisdicción primaria concurrente.

V

Por los fundamentos antes expuestos, reconsideramos nuestra Sentencia emitida el 6 de marzo de 2009 y revocamos la Sentencia emitida por el Tribunal de Apelaciones. Se

devuelve el caso al Tribunal de Primera Instancia para que, única y exclusivamente, determine si procede la sustitución de la codemandada Billboard One por cesión de interés, de conformidad con la Regla 22.3 de Procedimiento Civil.[86]

                                        *Efraín E. Rivera Pérez*
                                        *Juez Asociado*

---

[86] 32 L.P.R.A. Ap. III, R. 22.1.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


OutDoor Media Displays Posters, Inc. H/N/C CBS OutDoor

       Peticionaria

          v.

Billboard One, Inc, Waldemar Fernández, et als

       Recurridos

CC-2008-766


SENTENCIA


San Juan, Puerto Rico, a 29 de junio de 2010.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte integra de la presente, reconsideramos nuestra Sentencia emitida el 6 de marzo de 2009 y revocamos la Sentencia emitida por el Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que, única y exclusivamente, determine si procede la sustitución de la codemandada Billboard One por cesión de interés, de conformidad con la Regla 22.3 de Procedimiento Civil.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente con Opinión escrita. Las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez disienten sin opinión escrita.


          Aida Ileana Oquendo Graulau
         Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Outdoor Media Display Posters,
Inc., H/N/C CBS Outdoor

    Peticionario

       v.                          CC-2008-766

Billboard One, Inc.; Waldemar
Fernández; Caribbean Billboard
Corp.; Fulano y Mengano de Tal;
Corporación 123

      Recurrido

Opinión Disidente emitida por el JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 29 de junio de 2010.

Disentimos de la Opinión en reconsideración que emite este Tribunal en el día de hoy por entender que es contraria al derecho vigente. Específicamente, una mayoría de este Foro interpreta de forma incorrecta el Art. 29 de la Ley Núm. 355 de 22 de diciembre de 1999, conocida como la Ley Uniforme de Rótulos y Anuncios (Ley Núm. 355), 9 L.P.R.A. sec. 56b, y, como consecuencia, le impide a una persona utilizar el recurso de *injunction* estatutario establecido en el Art. 28 de la Ley Núm. 76 de 24 de junio de 1975 (Art. 28), conocida como la Ley Orgánica de A.R.Pe., 23 L.P.R.A. sec. 72. A nuestro juicio, esta decisión soslaya la letra clara de las referidas disposiciones de ley, por lo que discrepamos del dictamen del

Tribunal y reafirmamos el criterio expresado en la Sentencia del 6 de marzo de 2009 que hoy se reconsidera.

I.

CBS Outdoor presentó una demanda de *injunction* estatutario al amparo del Art. 28 de la Ley Orgánica de A.R.Pe., *supra*, contra Billboard One, el Sr. Waldemar Fernández, Caribbean Billboard Corp. y otros. En síntesis, alegó que los demandados operaban tableros de anuncios sin los correspondientes permisos expedidos por A.R.Pe. En específico, CBS Outdoor adujo que los demandados violaban el Art. 17 de la Ley Orgánica de A.R.Pe., 23 L.P.R.A. sec. 71p; la Sección 3.02 del Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4 de 5 de noviembre de 2000; el Art. 23(a) de la Ley Núm. 355, 9 L.P.R.A. sec. 54a y la Sección 7.01(1) del Código Uniforme de Rótulos y Anuncios de Puerto Rico, Reglamento Núm. 6237 de 28 de diciembre de 2000.

No obstante, el foro primario desestimó la demanda basándose en la doctrina de jurisdicción primaria concurrente, y señaló que la controversia de autos requería el conocimiento especializado de A.R.Pe. Insatisfecho, CBS Outdoor acudió ante el Tribunal de Apelaciones, el cual confirmó al Tribunal de Primera Instancia. En su sentencia, el foro apelativo intermedio concluyó, además, que la mera presentación de una solicitud de permiso o anteproyecto de variación, al amparo de la Ley Núm. 355 y el Reglamento Núm. 6237, *supra*, es suficiente para impedir que A.R.Pe. imponga

multas y paralice cualquier trámite judicial que se haya iniciado, tanto por la agencia administrativa como por cualquier persona particular. En este caso, los demandados habían reabierto un proceso de solicitud de permiso ante A.R.Pe. y habían presentado las correspondientes variaciones para los rótulos en controversia.

Inconforme con la decisión del Tribunal de Apelaciones, CBS Outdoor acudió ante nos y sostuvo que los foros inferiores habían errado al desestimar su demanda de *injunction*. El pasado 6 de marzo de 2009 emitimos una Sentencia en la que acogimos sus planteamientos y revocamos el dictamen del foro apelativo intermedio por entender que no era de aplicación la doctrina de jurisdicción primaria concurrente. No obstante, mediante la Opinión en reconsideración que hoy se emite, se deja sin efecto nuestra decisión anterior y se confirma en parte la sentencia recurrida para pautar una norma que contraviene el texto claro e inequívoco de las disposiciones aplicables a la controversia de autos. Por entender que tal proceder es errado, discrepamos.

## II.

En primer lugar, ha sido norma reiterada de este Tribunal que, siguiendo lo establecido en nuestro Código Civil, cuando la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir su espíritu. 31 L.P.R.A. sec. 14; Atlantic Pipe Corp. v. F.S.E., 132 D.P.R. 1026, 1030 (1993). Asimismo, cuando el legislador se ha

manifestado en un lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de la intención legislativa. Rojas v. Méndez & Co., Inc., 115 D.P.R. 50, 54 (1984). Por tal razón, hemos decidido que en aras de la liberalidad no podemos ir más allá de la ley. Rivera Coll v. Tribunal Superior, 103 D.P.R. 325, 331 (1975).

Con estos preceptos en mente, analizaremos el texto del Art. 29 de la Ley Núm. 355 para dilucidar si éste es claro e inequívoco respecto a la controversia de autos. La referida disposición reza como sigue:

> ARPE podrá imponer a cualquier persona que infringiere las disposiciones de este capítulo una multa de conformidad con el Reglamento de Multas Administrativas de ARPE. También podrá instar cualquier acción legal adecuada para implantar y fiscalizar las disposiciones de este capítulo.
>
> ARPE notificará al dueño del rótulo o anuncio ilegal y al dueño u ocupante del predio donde esté ubicado el mismo, de su intención de imponer multas por violaciones a las disposiciones de este capítulo y concederá un término de diez (10) días para que se corrija la violación a la misma, antes de imponer las mismas.
>
> **Para los fines de esta sección**, el conformar el rótulo o anuncio a lo exigido por ARPE o presentar el correspondiente anteproyecto en caso de solicitarse una variación; o presentar una solicitud de permiso de instalación del rótulo o anuncio afectado por la notificación será suficiente para detener el proceso de imposición de multas o paralizar el trámite de cualquier acción legal presentada. 9 L.P.R.A. sec. 56b. (Énfasis suplido)

Según se desprende del artículo citado, es evidente que el legislador facultó a A.R.Pe. para imponer multas a aquellas personas que infrinjan las disposiciones de la Ley

Núm. 355. Además, en el primer párrafo se establece claramente que A.R.Pe. podrá presentar **cualquier acción legal** adecuada para implantar y fiscalizar las disposiciones de dicha ley.

No obstante, el tercer párrafo señala que, **para los fines de este artículo**, el conformar el rótulo o anuncio a lo exigido por la A.R.Pe., presentar un anteproyecto si se está solicitando una variación, o una solicitud de permiso de instalación del rótulo o anuncio, será suficiente para detener el referido proceso de imposición de multas o paralizar el trámite de cualquier acción legal presentada. Por lo tanto, lo dispuesto en este párrafo sólo tiene tangencia con el proceso de imposición de multas o acciones legales llevadas a cabo por A.R.Pe. contra un infractor de la Ley Núm. 355.

Así pues, la letra de la ley es clara al limitar lo dispuesto en el tercer párrafo exclusivamente al proceso de imposición de multas o acciones legales presentadas por A.R.Pe. Por tal razón, nos sorprende que una mayoría de este Tribunal entienda que, en términos de hermenéutica jurídica, se deba acudir a la presunta finalidad de la Ley Núm. 355 para comprender a qué se refería el legislador cuando expresó "cualquier acción legal presentada" en el tercer párrafo del Art. 29. Nos parece que el texto es inequívoco al circunscribir la paralización de las acciones legales sólo a aquellas presentadas por A.R.Pe. con el propósito de implantar o fiscalizar las disposiciones de la Ley Núm. 355,

tal como lo menciona el primer párrafo del referido artículo. Por ende, una interpretación de este artículo no requiere una exégesis de la finalidad misma de toda la Ley Núm. 355, ni exige escudriñar más allá de su texto para aprehender la intención del legislador, pues ésta se desprende inequívocamente de la letra clara de la ley.

Por otro lado, el Art. 28 de la Ley Orgánica de A.R.Pe., *supra*, establece un mecanismo estatutario, especial y sumario, limitado a la obtención de órdenes para la paralización inmediata, provisional o permanente de usos contrarios a la ley. A.R.P.E. v. Rodríguez, 127 D.P.R. 793 (1991). Al igual que el *injunction* tradicional, la eficacia del remedio descansa en su naturaleza sumaria y en su pronta ejecución. Plaza Las Américas v. N & H, 166 D.P.R. 631 (2005).

El referido artículo establece el derecho de toda persona para acudir directamente al foro judicial, en preterición del procedimiento administrativo, e instar una reclamación dirigida a evitar estorbos a la propiedad. Para solicitar dicho remedio es necesario que una persona legitimada traiga a la consideración del tribunal que existe una ley o reglamento que regula cierto uso o actividad, y que la persona o personas demandadas se encuentran realizando un uso o actividad en violación a esa ley o reglamento. A.R.P.E. v. Rivera, 159 D.P.R. 429 (2003).

En el caso de autos, CBS Outdoor acudió al foro judicial mediante este mecanismo en busca de una orden que detuviera

la utilización de varios tableros de anuncios que no contaban con los correspondientes permisos expedidos por A.R.Pe. Asimismo, señaló la comisión de varias violaciones de leyes y reglamentos. Sin embargo, la Opinión del Tribunal pauta que, independientemente de los méritos de la solicitud de *injunction* presentada por cualquier persona al amparo del Art. 28, la presentación de una solicitud de permisos o anteproyecto por parte del demandado que utiliza un rótulo sin los permisos requeridos paraliza de por sí cualquier acción legal presentada por una persona particular. Es decir, que se aplica lo dispuesto en el Art. 29 de la Ley Núm. 355 para prohibir una acción legal al amparo del Art. 28.

Según aclaramos anteriormente, la disposición del Art. 29 de la Ley Núm. 355, el cual este Tribunal interpreta acomodaticiamente para pautar la norma antes dicha, sólo le aplica a los procedimientos o acciones legales incoadas por A.R.Pe. En este caso, CBS Outdoor presentó un recurso de *injunction* estatutario precisamente para detener el uso ilegal de varios tableros de anuncios. Sin embargo, la Opinión que emite hoy este Tribunal contraviene lo establecido por el legislador en el referido Art. 29, para equiparar a una persona particular con A.R.Pe., amparándose en una supuesta interpretación holística de la Ley Núm. 355 y su propósito.

Al proceder de esta manera no sólo se actúa al margen de la ley, bajo el pretexto de la presunta intención del legislador, sino que se le priva a una persona de ejercer un

recurso de *injunction* cuando es evidente que los demandados no tenían los permisos correspondientes para manejar los tableros en controversia. Más aún, las violaciones de ley y reglamentos no se circunscriben meramente a las disposiciones de la Ley Núm. 355, sino a los otros estatutos y reglamentos alegados en la demanda. Por lo tanto, a partir del dictamen que se emite en el día de hoy, se le prohíbe a una persona particular el denunciar ante el foro judicial una violación a lo dispuesto en la Ley Núm. 355, o sobre cualquier ley que tenga que ver con el uso debido y legítimo de los tableros en controversia. Al así hacerlo, se quiebra la finalidad misma del recurso de *injunction* contemplado en el Art. 28 y, a su vez, se avala la continuación de un acto revestido de ilegalidad. Tal curso de acción es una injusticia para quienes manejan este tipo de negocio con los debidos permisos otorgados por A.R.Pe. y que hoy quedan privados de un mecanismo legal para detener un uso ilegal de tableros y rótulos.

**III.**

Por todo lo antes expuesto, disentimos del criterio mayoritario por ser contrario al texto claro e inequívoco del Art. 29 de la Ley Núm. 533, *supra*. Como expresamos anteriormente, este artículo es de aplicación sólo a las acciones legales promovidas por A.R.Pe. En este caso, por el contrario, es CBS Outdoor quien presentó el recurso de *injunction* estatutario al amparo del Art. 28 de la Ley Orgánica de A.R.Pe., *supra*. Por lo tanto, no procedía la

desestimación de la demanda de *injunction* por la mera presentación de una solicitud de permiso o anteproyecto de variación por parte de los demandados. Tal proceder, sin duda alguna, nos obliga a disentir.

Federico Hernández Denton
Juez Presidente